Rosaline G. SHEETS, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–709.

United States Court of Veterans Appeals.

Submitted Sept. 16, 1991.

Decided July 1, 1992.

Rosaline G. Sheets, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and William S. Mailander were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Associate Judges.

IVERS, Associate Judge:

Appellant, Rosaline G. Sheets, widow of veteran Rudolph C. Sheets, appeals a March 19, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied service connection for her husband's death. We find that the Board erred in concluding, contrary to regulations of the Department of Veterans Affairs (formerly Veterans' Administration) (VA) that are relevant to this case, that lay evidence which is not supported by clinical evidence provides no basis on which to establish service connection. In addition, the Board erred in not applying the doctrine of reasonable doubt to this case, and it failed in its duty to assist the veteran's widow. Accordingly, we vacate the decision of the BVA and remand the case for readjudication consistent with this opinion.

## FACTS

The veteran served during World War II in the U.S. Army from February 1943 to November 1945. He was a combat infantry officer, and his commendations and decorations included the Combat Infantryman's Badge, the Silver Star Medal, and the European, African and Middle Eastern Campaign Medal with two Battle Stars. R. at 1. His separation examination was negative for any psychiatric abnormality. R. at 5. In September 1950, the veteran attempted to reenlist in the Army but was disqualified because of chronic nephritis (inflammation of the kidney). R. at 8, 53. In March 1951, the veteran was hospitalized for several days for a bleeding peptic ulcer. R. at 35–51. The hospital reports reveal a five-year history of gnawing epigastric pain aggravated by stress. R. at 50, 53. In May 1951, he reported during a VA examination that he suffered from, inter alia, depression, excessive worry, trouble sleeping, sleepwalking, indigestion, stomach trouble, and a duodenal ulcer. R.

at 11–12. That examination report also showed that he had experienced an incident of epigastric pain and diarrhea while serving in Italy in 1944. R. at 53. The diagnosis was duodenal ulcer, treated, improved. R. at 54.

In September 1971, Mr. Sheets committed suicide. R. at 17. In 1987, Mrs. Sheets filed a claim for service connection for her husband's death. Mrs. Sheets contended that her husband's death was the result of post-traumatic stress disorder (PTSD) from which she claimed he suffered as a result of his military combat experiences. R. at 22. In support of her claim, Mrs. Sheets submitted evidence, mostly in the form of lay statements of friends and relatives, describing Mr. Sheets' behavior. The behavior described is characteristic of many of the symptoms of PTSD. *See* Department of Veterans Affairs Adjudication Procedure Manual, Manual M21–1, para. 50.45b (regarding the essentials of diagnosis of PTSD). Included in the statements were descriptions of Mr. Sheets' isolation from neighbors and relatives, his violent anger, his nightmares about combat, his guilt over losing half of the men under his command, and his avoidance of reminders of his war experiences. R. at 56–60, 63–74. A doctor who had treated Mr. Sheets shortly before his death in 1971 stated that the veteran reported feeling depressed and despondent but that the veteran had attributed his depression to pressures on his job. R. at 26. Mrs. Sheets contended that it was much easier for her husband to tell the doctor that he was experiencing stress as a result of job pressure rather than as a result of his military experiences. R. at 19.

In addition, Mrs. Sheets submitted evidence of the combat experiences of her husband that she argues constitutes the kind of "stressors" that precipitate PTSD. R. at 18–21, 24–25, 28–33; *see also* Informal Br. of Appellant at third and fourth unnumbered page, answer to question # 2. This evidence included letters and diary entries of the veteran in which he described "the continual, grueling, grind ... and the tough labor and hardships of combat." R. at 28–33. The evidence also included a description of the combat incident which

led to his winning the Silver Star. R. at 18–21. Moreover, the record reveals that the veteran was sent home for "recuperation, rehabilitation, and recovery" in April 1945 for a period of 45 days which was later extended. R. at 81–100.

## ANALYSIS

### Lay Evidence of Service Connection under 38 U.S.C. § 1154(b) and 38 C.F.R. § 3.304(d).

■ The BVA reviewed the evidence in this case and concluded the following:

> ... the evidence does not clinically document any psychiatric disorder related to the veteran's period of service. We have carefully reviewed the affidavits of record, but these lay statements have not been supported by clinical evidence of a psychiatric disability, including post-traumatic stress disorder. We therefore regretfully find no substantial basis on which to conclude that the veteran's suicide was a result of a psychiatric disorder related to his period of active duty.

*Rosaline G. Sheets*, BVA 90–37158, at 3 (Mar. 19, 1990). The conclusion by the Board that lay evidence alone is insufficient to establish service connection is not in accordance with the law, and the BVA erred in not applying 38 U.S.C. § 1154(b) (formerly § 354(b)) and its accompanying regulation, 38 C.F.R. § 3.304(d) to this case. Section 1154(b) provides as follows:

> In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, *the Secretary [of Veterans Affairs (Secretary)] shall accept as sufficient proof of service-connection* of any disease or injury alleged to have been incurred in or aggravated by such service *satisfactory lay or other evidence of service incurrence* or aggravation of such injury or disease, *if consistent with the circumstances, conditions, or hardships of such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran.* Service-connection of

such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service-connection in each case shall be recorded in full.

38 U.S.C. § 1154(b) (emphasis added). Section 3.304(d) reiterates that satisfactory lay evidence alone will be accepted as sufficient proof of service connection:

> *Combat.* Satisfactory *lay or other evidence* that an injury or disease was incurred or aggravated in combat *will be accepted as sufficient proof* of service connection if the evidence is consistent with the circumstances, conditions or hardships of such service *even though there is no official record of such incurrence or aggravation.*

38 C.F.R. § 3.304(d) (1991) (emphasis added).

The Secretary argues that the lay evidence and the veteran's combat record were considered by the BVA but that the lack of any clinical evidence of diagnosis or treatment for psychiatric disability "rebutted any inference of service connection which could have been drawn from the lay statements...." Motion of Appellee at third unnumbered page. However, the law provides that satisfactory lay evidence shall be accepted as *proof,* rather than merely raise an "inference", and that such proof of service connection "may be rebutted by clear and convincing evidence *to the contrary.*" 38 U.S.C. § 1154(b) (emphasis added). The veteran's widow submitted lay evidence that, as a result of his combat experiences, the veteran suffered from PTSD which led to his death by suicide in 1971. Neither the Secretary nor the BVA explained how the lack of clinical evidence, which the law states is not necessary to establish proof of service connection, constitutes the "clear and convincing evidence to the contrary" that is needed to rebut the lay evidence in this case. Because the law specifically provides that service connection may be proven by satisfactory lay evidence, *without the support of official records,* it follows that the absence of such official clinical evidence alone is not sufficient to rebut the lay evidence.

This Court has held that the Secretary is not required to accept every bald assertion made by a veteran as to service incurrence or aggravation of a disability. *See Wood v. Derwinski,* 1 Vet.App. 190 (1991) (the BVA was not required to accept the uncorroborated statements of the veteran regarding service connection). However, 38 U.S.C. § 1154(b) does not allow the conclusion, which the BVA reached in this case, that simply because lay evidence is unsupported by clinical records it is therefore uncorroborated and necessarily insufficient as a basis upon which to justify service connection. *See Smith v. Derwinski,* 2 Vet.App. 137, 140 (1992).

Application of 38 C.F.R. § 3.302 and the Reasonable Doubt Doctrine.

Although the Board listed 38 C.F.R. § 3.302 in its LAWS AND REGULATIONS section, it did not discuss how this regulation, regarding "[s]ervice connection for mental unsoundness in suicide", was applied to the facts of this case. The regulation provides in its entirety as follows:

> (a) *General.* (1) In order for suicide to constitute willful misconduct, the act of self-destruction must be intentional.
>
> (2) A person of unsound mind is incapable of forming an intent (mens rea, or guilty mind, which is an essential element of crime or willful misconduct).
>
> (3) It is a constant requirement for favorable action that the precipitating mental unsoundness be service connected.
>
> (b) *Evidence of mental condition.* (1) Whether a person, at the time of suicide, was so unsound mentally that he or she did not realize the consequence of such an act, or was unable to resist such impulse is a question to be determined in each individual case, based on all available lay and medical evidence pertaining to his or her mental condition at the time of suicide.
>
> (2) *The act of suicide* or a bona fide attempt *is* considered to be *evidence of mental unsoundness. Therefore, where no reasonable adequate motive for suicide is shown by the evidence, the act will be considered to have resulted from mental unsoundness.*

(3) A reasonable adequate motive for suicide may be established by affirmative evidence showing circumstances which could lead a rational person to self-destruction.

(c) *Evaluation of evidence.* (1) Affirmative evidence is necessary to justify reversal of service department findings of mental unsoundness where Department of Veterans Affairs criteria do not otherwise warrant contrary findings.

(2) In all instances any reasonable doubt should be resolved favorably to support a finding of service connection (see § 3.102).

38 C.F.R. § 3.302 (1991) (emphasis added). In citing this regulation in its LAWS AND REGULATIONS section, the BVA paraphrased it as follows:

Service connection may be granted for the cause of death by suicide where it is shown that at the time of death there was mental unsoundness which was due to or was the proximate result of a service-connected disease or injury. The act of suicide is not of itself sufficient to justify a finding of mental unsoundness.

*Sheets*, BVA 90–37158, at 4.

▇ The second sentence misstates the law. Suicide alone *may be* sufficient evidence upon which to base a finding of mental unsoundness under the regulation. The regulation provides that suicide *is* evidence of mental unsoundness and that the strength of that evidence is such that, unless there is evidence of a "reasonable adequate motive" for suicide, the act will be considered the result of mental unsoundness. 38 C.F.R. § 3.302(b)(2). Here, the BVA did not articulate, based on its review of the record, a "reasonable adequate motive" for the veteran's suicide. In the absence of such a motive, the law requires that the act of suicide be considered a result of mental unsoundness. Therefore, the veteran's suicide is additional evidence *in support of* the evidence offered by his widow that he was suffering from a mental disorder which Mrs. Sheets claims, more specifically, was PTSD.

▇ In addition, section 3.302(c)(2) provides that "[i]n all instances any reasonable doubt [about whether or not the veteran's suicidal death was the result of service-connected mental unsoundness] should be resolved favorably to support a finding of service connection." The regulation then refers to 38 C.F.R. § 3.102, pertaining to reasonable doubt. That section provides in pertinent part:

... Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine. *The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat,* or similarly strenuous conditions, and is consistent with the probable results of such known hardships.

38 C.F.R. § 3.102 (1991) (emphasis added). Because the regulation provides that the application of the doctrine of reasonable doubt is particularly important in cases where the basic incident allegedly arose under combat conditions despite the absence of official records, it is particularly troublesome that the BVA did not mention the doctrine at all in its decision.

This Court has held that the failure of the BVA to apply the benefit of the doubt rule or to set forth clearly its reasons for not applying it constitutes error. *See O'Hare v. Derwinski,* 1 Vet.App. 365, 367 (1991); *Sussex v. Derwinski,* 1 Vet.App. 526, 529 (1991). In addition, the Court notes that 38 U.S.C. 1154(b) provides specifically that the Secretary "shall resolve every reasonable doubt in favor of the veteran." Here, not only did the veteran's combat status create a heightened need for application of the reasonable doubt doctrine under 38 U.S.C. § 1154(b), but so did Mrs. Sheet's claim that his suicide resulted from allegedly service-incurred PTSD, a claim which called for the application of 38 C.F.R. § 3.302 which, like § 1154(b), especially provides for application of the doctrine. 38 C.F.R. § 3.302(c)(2). Further-

more, because the BVA cited no evidence or facts by which to impeach or contradict Mrs. Sheets' claim, there was no justifiable basis upon which to deny application of the doctrine under 38 C.F.R. § 3.102.

### The Duty to Assist.

 The Department of Veterans Affairs is obliged under 38 U.S.C. § 5107(a) (formerly § 3007(a)) to assist claimants in developing the facts pertinent to their claims. Under this provision, a claimant bears the initial burden of submitting evidence "sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). "A well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden" required by the statute. *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990); *Moore v. Derwinski*, 1 Vet. App. 401, 405 (1991). Here, the appellant has satisfied this burden in presenting evidence of the veteran's combat experiences which possibly were "stressors" of the kind that precipitate PTSD; medical evidence that showed, inter alia, that the veteran suffered from stress which aggravated his ulcer; lay statements of friends and relatives describing the veteran's behavior which was characteristic of many of the symptoms of PTSD; and evidence of his death by suicide.

The claimant having submitted a well-grounded claim, section 5107(a) requires that the Secretary assist her "in developing the facts pertinent to the claim." Although the Board obviously could not have ordered a medical examination in this case, the issues raised before it presented an appropriate case in which to seek an advisory medical opinion concerning the relationship, if any, between the veteran's combat experience, his behavior, and his death on the one hand, and the causes and symptoms associated with PTSD on the other. Upon remand, such action would be a viable way for the BVA to fulfill its duty to assist the appellant. *Sussex*, 1 Vet.App. at 530.

## CONCLUSION

For the reasons stated above, the Court holds that the BVA erred when it failed to apply 38 U.S.C. § 1154(b), 38 C.F.R. § 3.304(d) and the doctrine of reasonable doubt to the facts of this case and when it failed in its duty to assist the appellant in developing her claim. In addition, we hold that the Board erred in its application of 38 C.F.R. § 3.302 to the facts of this case. Finally, upon readjudication of this case, the Board will provide reasons or bases for its decision in accordance with 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) and with the standard articulated by this Court in *Gilbert v. Derwinski*, 1 Vet.App. 49, 56 (1990). Accordingly, the Secretary's motion for summary affirmance in this case is denied, the decision of the BVA is VACATED, and the case REMANDED for readjudication consistent with this opinion.