**Harry D. ANTONIAN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 91–1826.

United States Court of Veterans Appeals.

Feb. 10, 1993.

Before STEINBERG, Associate Judge.

MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, Vietnam veteran Harry D. Antonian, appeals from an August 30, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for temporomandibular joint (TMJ) syndrome and a fungus infection of the feet, and denying an increased evaluation for his service-connected residuals of a left-shoulder injury. *Harry D. Antonian,* BVA 91-____ (Aug. 30, 1991). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. Summary disposition is appropriate because the case

is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). The matter will be remanded to the Board for fulfillment of the statutory duty to assist, and for readjudication on the basis of all relevant provisions of law and regulation.

The veteran served on active duty in the U.S. Army from January 1967 to January 1969, apparently including combat duty in Vietnam (he was awarded a Combat Infantryman's Badge). R. at 1. Service medical records indicate that in November 1967, while serving in Vietnam, the veteran suffered a seizure, during which he dislocated his left shoulder. R. at 15. Immediately after the seizure, he was taken to the 71st Evacuation Hospital. *Ibid.* No records from that hospital appear in the record. Approximately one week later, he was transferred to the U.S. Army Hospital at Camp Zama, Japan, where he remained hospitalized for over a month. *Ibid.* A record of the veteran's hospital course at Camp Zama lists diagnoses of "Seizure disorder, major motor, unknown etiology"; "Hookworm"; and "Shoulder dislocation, posterior". *Ibid.* All three were stated to have been incurred in the line of duty.

In December 1967, the veteran was given a permanent limited-duty physical profile due to his seizure disorder and was placed on the following restriction: "No assignment to unit where sudden loss of consciousness would be damaging to self or others, such as work on scaffolding, handling ammunition, vehicle driving, working near moving machinery." R. at 16. The only defects noted on his separation examination were a "seizure disorder" and an "abnormal [left] shoulder". R. at 12. On a March 1969 report of a Veterans' Administration (now Department of Veterans Affairs) (VA) examination pursuant to the veteran's application for VA service-connected disability benefits, the only defect noted was a "Convulsive disorder". R. at

18–23. In May 1974, the veteran underwent surgery ("Left Bristow Repair") to remedy the recurrent dislocations of his left shoulder. R. at 24.

Beginning in April 1989, the veteran was treated at two different VA medical centers for various conditions, including pain and limitation of motion in the left shoulder, TMJ syndrome ("dysfunction of the masticatory apparatus related to spasm of the muscles of mastication precipitated by [disharmony of the contact surfaces of the upper and lower teeth] or alteration in vertical dimension of the jaws", STEDMAN'S MEDICAL DICTIONARY 1077, 1533 (25th ed. 1990)), and tinea pedis (athlete's foot, *id.* at 1603). R. at 28–81. Records of VA medical treatment in May 1989 state that he had not had any dislocations of the left shoulder since the 1974 operation. R. at 29. Numerous VA medical records from 1989 and 1990 document that the veteran suffers from pain in his left shoulder. *See* R. at 29, 35, 47, 48, 50, 52–53, 58, 78, 102. Additionally, several VA medical reports refer to varying degrees of limitation of motion of the left shoulder and arm. *See* R. at 47, 78, 102. A March 1990 statement from a private physician states that he had treated the veteran on eight occasions in 1989 and 1990 for "recurrent dislocations since 1970 despite surgical pinning", and that his left shoulder is "mildly subluxed". R. at 143.

The 1989 and 1990 VA treatment records contain diagnoses of current TMJ syndrome, involving pain. R. at 43–44, 65–71. One VA radiologist's report in May 1989 noted that the veteran "suffered an injury to [both] TMJs [in] 1967 in active duty". R. at 44. Those VA records also include a February 1990 VA diagnosis of tinea pedis. R. at 63–64.

In August 1989, a VA regional office (RO) awarded the veteran service connection, at a 20% rating, for "[r]ecurrent left shoulder dislocation", and denied service connection for TMJ syndrome. R. at 83–84. The veteran subsequently submitted several lay and medical statements in support of his claims for service connection for a foot fungus (which had not then been adjudicated by the RO) and TMJ syndrome, and for a higher evaluation for his left-shoulder disability. In a December 1989 statement, a manicurist who had given the veteran pedicures since 1978 reported that during that time he had always had a fungus on his feet that he had told her was incurred in service. R. at 110. In another statement, the veteran's mother stated that in letters to her during his service he had complained of a foot fungus; that she had sent him medication to treat the fungus; and that his jaw was lopsided and made noises after he had arrived home from service. R. at 115–16. In a January 1990 statement, a private dentist stated that he had treated the veteran since July of 1984 and that, during that interval, the veteran had complained of "bothersome clicks and discomforts of his jaw." R. at 119.

In February 1990, the veteran testified under oath before the RO that subsequent to his seizure in service he had been placed "in a track" with his jaw locked in an open position for four to eight hours (R. at 129); that he had never had any jaw problems prior to service and had not suffered any additional jaw injuries since service (*ibid.*); and that he had had a foot fungus problem on and off since service (R. at 130). Thereafter, the veteran submitted an August 1990 lay statement from a person who stated that he had served in the medical corps in Vietnam; that he recalled treating the veteran in November 1967 after his convulsion; that the veteran's shoulder and jaw had been dislocated, requiring the attending physician to put them back in their sockets; and that he had cut off the veteran's boots and observed "jungle rot" all over his feet and ankles. R. at 147.

## ANALYSIS

### A. Increased Rating for Left–Shoulder Disability

In denying an increased rating for the service-connected left-shoulder disability, the BVA in August 1990 noted that the veteran's shoulder disability was rated under diagnostic code (DC) 5202 ("Humerus, other impairment of") of VA's Schedule for Rating Disabilities as 20% disabling, based

on "[r]ecurrent dislocation of [the humerus] at scalpulohumeral joint ... [w]ith infrequent episodes and guarding of all arm movements". 38 C.F.R. § 4.71a, DC 5202 (1992). The Board noted that a 30% rating was assignable under that DC if there were "frequent episodes of dislocation" (*ibid; Antonian*, BVA 91-____, at 6), but that the veteran had testified that he had not had any dislocation since 1974, and that, thus, there was no basis for awarding a 30% rating under that provision. The Board further noted that under 38 C.F.R. § 4.71a, DC 5201 ("Arm, limitation of motion of"), a 30% rating could be assigned for a shoulder disability when the range of motion of the arm is limited to "midway between side and shoulder level" (or, as the Board stated, "abduction or adduction of the shoulder would have to be limited to approximately 45 degrees", *Antonian*, BVA 91-____, at 6). However, the Board concluded that, according to the medical evidence of record, "shoulder motion was repeatedly measured and was consistently above shoulder level." *Antonian*, BVA 91-____, at 6.

The appellant contends that the Board erred, in its adjudication of this claim, by failing to explain its analysis of all relevant evidence, particularly evidence of recurrent left-shoulder dislocations, mild left-shoulder subluxation (incomplete or partial dislocation, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1599 (27th ed. 1988)) (R. at 143), and left-shoulder pain (R. at 35, 47–48, 50–60, 68–69, 78, 143); and by failing to consider and discuss the applicability of 38 C.F.R. § 4.40, providing for a disability rating based on functional loss due to pain. The Court agrees with the appellant's assertions of error.

■ Pursuant to 38 C.F.R. §§ 4.40 and 4.45 (1992), a musculoskeletal disability rating may be based on functional loss due to pain if supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. *See* 38 C.F.R. § 4.40 ("[w]eakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled"); *Schafrath v. Derwinski*, 1 Vet.App. 589, 592–93 (1991); *Fer-*

*raro v. Derwinski*, 1 Vet.App. 326, 330 (1991). "Where, as here, the claimant asserts to the BVA facts which would support a rating of compensable functional loss due to pain, section 4.40 must be applied to determine if [an increased] rating is warranted." *Schafrath, supra; see also EF v. Derwinski*, 1 Vet.App. 324, 326 (1991) Board must "'review all issues which are reasonably raised from a liberal reading'" of "all documents or oral testimony submitted prior to the BVA decision" (quoting *Myers v. Derwinski*, 1 Vet.App. 127, 129 (1991)); *Douglas v. Derwinski*, 2 Vet.App. 435, 438–40 (1992) (en banc).

■ Here, the medical evidence of record indicates that the veteran currently suffers from pain on movement of his left shoulder resulting from his service-connected disability. R. at 35, 47–48, 50–60, 68–69, 78, 143. In view of this evidence, the Board was required to apply 38 C.F.R. §§ 4.40 and 4.45 to determine whether his pain resulted in a functional disability which could be assigned a 30% rating under DC 5201 or any other applicable provision, and to provide an adequate statement of the "reasons or bases for [its] findings and conclusions" on that issue. 38 U.S.C.A. § 7104(d)(1) (West 1991); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 56 (1990). Therefore, remand is required for the Board to fulfill those requirements. If the Board concludes on remand that the evidence of record is insufficient for purposes of evaluating the level of functional disability caused by the veteran's pain, it shall order an examination addressing that issue. *See Schafrath*, 1 Vet.App. at 595; *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991); 38 C.F.R. § 4.2 (1992). In any such examination, the examiner must review all pertinent medical records. *See Proscelle v. Derwinski*, 2 Vet.App. 629, 632 (1992); *Green (Victor) v. Derwinski*, 1 Vet.App. 121, 124 (1991).

■ Furthermore, as part of its obligation under 38 U.S.C.A. § 7104(d)(1) to provide an adequate statement of the reasons or bases for its findings and conclusions on "all material issues of fact and law presented on the record", the Board is re-

quired to include an "analysis of the credibility and probative value of the evidence submitted by or on behalf of the veteran in support of [the] claim". *Gilbert,* 1 Vet. App. at 59. In the present case, the Board stated that the veteran had testified that he had not had any dislocations of the left shoulder since 1974, and it then denied a higher rating based on "frequent episodes" of dislocation. *Antonian,* BVA 91-___, at 6. However, the Board failed to discuss the March 1990 letter from a private physician indicating that he had treated the veteran on eight different occasions in 1989 and 1990 for "pain and decreased range-of-motion as a result of recurrent dislocations since 1970 despite surgical pinning", and that the veteran's left shoulder is "mildly subluxed". R. at 143. The Board was required to examine this evidence in the context of the applicable schedular rating criteria, and to explain why this evidence did not support a higher rating on the basis of "frequent episodes" of dislocation of the scalpulohumeral joint under DC 5202.

The appellant further contends that the Board erred in failing to consider the veteran's claims for an increased service-connected rating for his left-shoulder disability under 38 U.S.C.A. § 1151 (West 1991), which provides for service connection of disabilities resulting from VA hospitalization, medical or surgical treatment, or vocational rehabilitation. Because this claim was never raised to the RO or the BVA, it is not properly before the Court at this time, and the Court will not consider it. *See Herzog v. Derwinski,* 2 Vet.App. 502, 503 (1992); *Branham v. Derwinski,* 1 Vet. App. 93, 94 (1990).

### B. TMJ Syndrome

In denying service connection for the veteran's TMJ syndrome, the Board noted that there was no medical evidence of any jaw dislocation in service or of any jaw disability during service or after service prior to 1989. *Antonian,* BVA 91-___, at 4–5. The Board noted that the veteran's sworn testimony and the lay statement of a former medical corpsman both indicated that the veteran had dislocated his jaw in service. However, the Board concluded:

The recollections of the veteran and a witness as to a joint dislocation 20 years ago is [sic] not sufficient to establish that a chronic disability had its onset during service. The recent testimony, made for claims purposes, many years after service is not sufficiently probative to outweigh the medical records made during and shortly after service.

*Id.* at 5.

The appellant contends that the Board was required, under 38 U.S.C.A. § 1154(b) (West 1991), to accept the veteran's testimony and lay evidence of service incurrence of TMJ syndrome. He further contends that the Board erred in failing to assist the veteran by seeking to obtain service medical records which could substantiate his claim, and in failing to consider whether his TMJ syndrome should be service connected because it resulted from other service-connected disabilities.

■ In adjudicating the claims of "a veteran who engaged in combat with the enemy", the Board is required under 38 U.S.C.A. § 1154(b) to "accept as sufficient proof of service connection of any disease or injury ... satisfactory lay or other evidence of service incurrence or aggravation" of the condition, "if consistent with the circumstances, conditions, or hardships" of such service, even though there is no official record of such service incurrence or aggravation, unless such evidence is rebutted by "clear and convincing evidence to the contrary". The evidence in this case shows that the veteran had received a Combat Infantryman's Badge, indicating that he had "engaged in combat with the enemy". R. at 1. Therefore, the BVA was required to consider and discuss the veteran's testimony and other lay evidence in the context of section 1154(b) and to address the applicability of that provision to the evidence in this case. *See Sheets v. Derwinski,* 2 Vet.App. 512, 515 (1992). It was not permissible for the Board to reject the veteran's lay evidence of service incurrence of TMJ syndrome simply because it was not substantiated by contemporaneous medical evidence. *See Smith (Bernard) v. Derwinski,* 2 Vet.App. 147, 148 (1992); 38

U.S.C.A. § 1154(a) (West 1991); 38 C.F.R. § 3.303(a) (1992). Rather, if the veteran "engaged in combat with the enemy", the Board was required to accept such lay evidence if consistent with the circumstances of the veteran's service and unless rebutted by **clear and convincing** evidence to the contrary. *See Sheets, supra.*

■ The veteran asserts that the Board erred in failing to seek to obtain records of his treatment at the 71st Evacuation Hospital immediately following his seizure in service. Pursuant to 38 U.S.C.A. § 5107(a) (West 1991), once a claimant has submitted a well-grounded claim, the Board is required to assist that claimant in developing the facts pertinent to the claim. In the present case, the Court holds that the veteran has submitted a well-grounded claim for service connection of TMJ syndrome on the basis of his sworn testimony and the medical corpsman's lay statement. *See Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990) (a well-grounded claim is a "plausible" claim).

The evidence of record includes a December 1967 medical report from Camp Zama stating that the veteran had been transferred there from the 71st Evacuation Hospital, where he had been taken immediately following his seizure. However, the record does not contain any medical records from that hospital. Because such records would clearly be relevant to the claim of service connection for TMJ syndrome based on dislocation of the jaw in service, VA should have sought to obtain those records. The record does not reveal what efforts, if any, were made by the RO or BVA to seek to obtain such records. On remand, therefore, the Board should seek to obtain any such records or explain why they cannot be obtained. *See Littke v. Derwinski*, 1 Vet. App. 90, 92 (1990).

With regard to the appellant's claim that the Board was required to consider his entitlement to secondary service connection for his TMJ syndrome because it resulted from other service-connected disabilities (*see* 38 C.F.R. § 3.310 (1992)), this claim was never raised to the RO or the BVA, and, therefore, it is not properly before the Court at this time and will not be considered. *See Herzog, supra; Branham, supra.*

## C. Foot Fungus

■ In denying service connection for a foot fungus, the Board noted that the medical evidence did not show any complaints of or treatment for a foot fungus during service or at any time after service until 1990, when tinea pedis was diagnosed. The Board noted that the veteran's sworn testimony and other lay statements indicated that the veteran suffered from a foot fungus during service. However, the Board concluded: "Consistent with our previous comments, this testimony based on memory long after service, made for claims purposes, is not sufficient to outweigh the medical records which were made for routine purposes during and shortly after service." *Antonian*, BVA 91-____, at 5. As with the TMJ-syndrome claim, the appellant asserts that the Board erred with respect to the foot-fungus claim by failing to accept his testimony and lay evidence under section 1154(b) and failing to seek to obtain service records which could substantiate his claims.

For the reasons stated above with regard to the TMJ-syndrome claim, the Court holds that the Board erred in failing to consider and discuss the applicability of section 1154(b) and to evaluate this combat veteran's lay evidence in light of that statutory provision. *See also Smith, supra*, 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.303(a). Furthermore, the requirement stated in part B., above, that the Board on remand seek to obtain additional relevant service medical records or explain why such records cannot be obtained, applies with equal force to the veteran's claim for service connection for a foot fungus.

## CONCLUSION

Upon consideration of the record, the appellant's brief and reply brief, and the Secretary's motion for summary affirmance, the Court holds that the BVA committed prejudicial error, requiring remand, in its failures to assist the veteran in obtaining private medical records pertinent to

his claim, to consider the applicability of 38 U.S.C.A. § 1154(b), and to provide an adequate statement of reasons or bases for its evaluation of the evidence and for the application of the benefit-of-the-doubt rule (38 U.S.C.A. § 5107(b) (West 1991); *see Gilbert*, 1 Vet.App. at 53–56). Therefore, the Court denies the Secretary's motion, vacates the August 30, 1991, BVA decision, and remands the matter to the Board for prompt fulfillment of the duty to assist and prompt readjudication consistent with this decision. A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of that new decision is mailed to the appellant.

VACATED AND REMANDED.