Willie R. ELKINS, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–1130.

United States Court of Veterans Appeals.

Argued Feb. 1, 1994.

Decided Nov. 7, 1995.

D.C. Daniel, Jr., Murfreesboro, TN, for appellant.

Rosalind E. Masciola, with whom Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; and Thomas A. McLaughlin, Deputy Assistant General Counsel, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and STEINBERG, Judges.

NEBEKER, Chief Judge:

The appellant, Willie R. Elkins, appeals a July 20, 1992, decision of the Board of Veterans' Appeals (BVA) denying service connection for a psychiatric disability. After oral argument, the Court ordered supplemental memoranda addressing 38 C.F.R. § 3.302 (1994), "[s]ervice connection for mental unsoundness in suicide." The appeal was then held in abeyance pending the disposition of *Robinette v. Brown,* 8 Vet.App. 69 (1995). On consideration of the briefs, oral argument, and the supplemental memoranda submitted by the parties, the Court will affirm the decision of the BVA.

## I.

The appellant had qualifying service in the Armed Forces from October 1967 to August 1968. R. at 17. On three separate occasions during service, he was diagnosed with inadequate personality after he (1) inflicted

wounds on his lower right arm with a razor blade in April 1968, (2) inflicted wounds upon his chest and lower arms with a razor blade in July 1968, and (3) suffered an episode of hyperventilation. R. at 49, 52, 55, and 56. He was hospitalized following the April 1968 incident. R. at 52. Although he denied suicidal intent following his April 1968 self-mutilation, R. at 55, his conduct was characterized by the chief of an Air Force neuropsychiatric service as a "suicidal gesture." R. at 56. He was administratively discharged as a consequence of an Air Force psychiatrist's diagnosis of personality disorder. R. at 49, 58, 63.

In 1979, the appellant was admitted to a VA hospital for treatment of a self-inflicted gunshot wound to his abdomen. R. at 70–76. He then filed his original claim for service connection for a nervous condition, and that claim was denied by a BVA decision dated October 17, 1980. R. at 101–04. Requests to reopen the claim were denied by a VA regional office (RO) in February 1981 (R. at 125) and May 1981 (R. at 132). In December 1982, the RO issued a confirmed rating decision. R. at 138. In 1983, while a patient in a VA hospital, the appellant was first diagnosed with paranoid schizophrenia and explosive personality. R. at 142. On January 30, 1984, the BVA affirmed the RO's decision denying reopening of the appellant's claim for an acquired psychiatric disorder, including post-traumatic stress disorder (PTSD). The BVA concluded that the evidence did not establish PTSD and that the appellant had failed to show that his schizophrenia was service connected. R. at 146–51. In 1986, the appellant was admitted to a VA hospital where he was again diagnosed with schizophrenia and, additionally, with dementia secondary to alcoholism. R. at 214.

In 1987, during his testimony before the RO, the appellant first notified VA that he had received psychological treatment at Moccasin Bend Psychiatric Hospital, a private medical facility, about one year after his discharge from service. R. at 229. After the hearing, VA obtained these medical records. The records revealed that on August 31, 1969, one year and a day after the appellant's discharge from service, he was admitted to

Moccasin Bend and received psychological treatment. R. at 234. Additionally, the records stated that three weeks before this admission he had received medical treatment at White County Hospital. Id. The Moccasin Bend records reflected a diagnosis of passive-aggressive personality and excessive periodic drinking. After reviewing these medical records, the RO, in March 1987, issued a decision denying the appellant's request to reopen his claim. R. at 241. In its decision dated April 22, 1988, the BVA affirmed, concluding that the appellant had failed to establish a new factual basis supporting service connection for a psychiatric disability. R. at 267.

In August 1990, the appellant submitted a request for reconsideration of his claim based on allegations of clear and unmistakable error (CUE) in the "original rating decision" and all subsequent decisions, and he submitted supporting evidence. R. at 280–81. The RO denied the appellant's CUE claim and denied reopening in 1990 and 1991, decisions which the appellant appealed to the BVA. R. at 320–21, 324, 333, 354. In the 1992 decision that is now before us on appeal, the BVA determined that no "new and material" evidence had been submitted to warrant reopening the claim, and that its previous decision in 1988 was not predicated on obvious error. R. at 13. The appellant filed a timely appeal to this Court.

## II.

■ Pursuant to 38 U.S.C. § 5108, the Secretary must reopen a previously and finally disallowed claim when "new and material" evidence is presented with respect to that claim. See 38 U.S.C. § 7104(b). Whether evidence is "new and material" is a question of law which this Court reviews de novo. 38 U.S.C. § 7261(a)(1); see *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). Material evidence is, at a minimum, relevant to and probative of the issue at hand, while new evidence is that which is not "merely cumulative of other evidence on the record." *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). A veteran seeking to reopen a claim must show that, when considered with all the evidence of record, the new evidence creates a reason-

able possibility of changing the original outcome on the merits. *See Colvin*, 1 Vet.App. at 174. Assuming, as *Glynn v. Brown*, 6 Vet.App. 523, 528–29 (1994) stated, that in determining whether new and material evidence exists all relevant evidence submitted after the last final decision on the merits must be considered, the Court concludes that there is no new and material evidence even if all the evidence submitted since the 1980 BVA decision is considered.

Since the 1980 BVA decision, the appellant submitted: (1) duplicate service medical records; (2) new private medical records, including the 1969 diagnosis of passive-aggressive personality and excessive periodic drinking; (3) new VA medical records, including the 1983 diagnosis of schizophrenia; and (4) statements and lay testimony by the appellant and others to the effect that his psychiatric disorder had first developed during his military service. Although the records that were not before the BVA in its 1980 decision are "new," they are neither relevant to nor probative of whether the appellant's current psychiatric condition was incurred in or aggravated by service. The appellant was diagnosed with a personality disorder in service. A personality disorder is not recognized as a compensable mental disability under the law. *See* 38 C.F.R. § 4.127 (1994). He did not receive a diagnosis of schizophrenia until 1983, more than ten years after his active military service. Schizophrenia is a compensable, service-connectable mental disorder. *See* 38 C.F.R. § 4.132 (1994). There is no medical opinion in the record that links either the appellant's schizophrenia or his subsequent, additional diagnosis of dementia associated with alcoholism to the personality disorder that initially manifested itself during his military service. The duplicate service medical records are not "new," as they were previously of record. Accordingly, the Court holds that the evidence the appellant has submitted either is not new, or, where new, is not material as to the issue of service connection. Finally, even if it could be argued that the application of a regulatory presumption of mental unsoundness based on the appellant's suicide attempts provides an evidentiary basis for reopening, *see Akins v. Derwinski*, 1 Vet.App. 228, 230 (1991), for the reasons stated in Part III, *infra*, such evidence, when viewed in the context of all the evidence of record, would not create a reasonable possibility of changing the outcome. *See Colvin, supra.* Thus, the BVA did not err in refusing to reopen the appellant's claim.

### III.

Before the BVA, the appellant asserted that the RO had committed CUE in the "original rating decision" and subsequent decisions. R. at 342. In its July 1992 decision now on appeal, the BVA did not specifically address the appellant's allegations of CUE. R. at 6–10. In his brief and in oral argument before this Court, the appellant contends that the BVA, in denying reopening in 1988 and 1992, committed CUE because it (1) arbitrarily and capriciously ignored as evidence of presumptive service connection the fact that the appellant was hospitalized for mental illness within one year after his discharge from service, (2) breached its duty to assist by not obtaining medical records from White County Hospital and by not conducting a specialized psychiatric examination of the appellant, and (3) failed to apply the provisions of 38 C.F.R. § 3.302 in the adjudication of his claim. Appellant's Brief (Br.) at 7–8, 13, 19. The appellant also asserts that the BVA breached its duty to assist by failing to obtain independent medical evidence analyzing the possible connection between the appellant's mental problem for which he was hospitalized in service and his subsequent diagnosis of schizophrenia, and that his schizophrenia was misdiagnosed in service as a personality disorder. Appellant's Br. at 7–8.

The pertinent VA regulation provides as to CUE:

> (a) *Error.* Previous determinations which are final and binding ... will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the

grounds of clear and unmistakable error has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a) (1994). Initially, we note that asserted error by the BVA cannot be raised as a CUE issue. As the U.S. Court of Appeals for the Federal Circuit has held, pursuant to 38 C.F.R. § 3.105(a), only RO decisions—not BVA decisions—are subject to review for CUE. *See Smith (William) v. Brown,* 35 F.3d 1516, 1527 (Fed.Cir.1994). Second, to the extent that the appellant alleges CUE in an RO decision that was ultimately appealed to the BVA, because such RO decision was subsumed by the BVA decision, it also cannot be a basis for CUE. *See* 38 C.F.R. § 20.1104 (1994); *see also Mykles v. Brown,* 7 Vet.App. 372, 374–75 (1995) (holding that, with respect to an RO decision that has been subsumed by a BVA decision, "no claim of CUE under 38 C.F.R. § 3.105(a) exists as a matter of law"). Third, to the extent that the appellant could argue that there was CUE in an unappealed RO decision, under the facts of this case, as discussed, *infra,* the appellant's arguments would avail him nothing.

■ In its April 1988 decision, although the BVA considered the appellant's medical records from Moccasin Bend in the adjudication of his claim, it failed to mention medical records from White County. However, in the decision on appeal, the BVA discussed its unsuccessful efforts to obtain the appellant's medical records from White County Hospital, noting that those records were unavailable. R. at 8–9. Although unsuccessful in the effort to obtain the White County medical records, the Secretary fulfilled any duty to assist that may have been owed, and to explain his actions pertaining thereto.

■ Consistent with this Court's holding in *Caffrey v. Brown,* 6 Vet.App. 377, 384 (1994), a breach of the duty to assist cannot form the basis of a CUE claim. Even if the Secretary's duty to assist was unfulfilled with regard to the White County records or to the failure to conduct a psychiatric examination of the appellant, there is no basis for concluding that had either or both such actions been undertaken, the result of the adjudication

would have been manifestly different. To conclude otherwise would be pure speculation. For the appellant's claim of CUE to prevail, there must have been in the RO's prior adjudication of the claim "the kind of error, of fact or of law, that when called to the attention of later reviewers *compels* the conclusion, to which reasonable minds could not differ, that the result would have been *manifestly* different but for the error." *Fugo v. Brown,* 6 Vet.App. 40, 43 (1993); *see Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (en banc). CUE is outcome determinative, and "is based upon an assertion that there was an incorrect application of the law or fact *as it existed at the time of the disputed adjudication." Caffrey,* 6 Vet.App. at 383; *see also Russell,* 3 Vet.App. at 314.

Additionally, we conclude that the failure to apply the provisions of 38 C.F.R. § 3.302 with respect to the assertion of CUE was not prejudicial to the appellant. *See* 38 U.S.C. § 7261(b); *Fugo,* 6 Vet.App. at 45. Section 3.302 provides:

**Service connection for mental unsoundness in suicide.**

(a) *General.* (1) In order for suicide to constitute willful misconduct, the act of self-destruction must be intentional.

(2) A person of unsound mind is incapable of forming an intent (mens rea, or guilty mind, which is an essential element of crime or willful misconduct).

(3) It is a constant requirement for favorable action that the precipitating mental unsoundness be service connected.

(b) *Evidence of mental condition.* (1) Whether a person, at the time of suicide, was so unsound mentally that he or she did not realize the consequence of such an act, or was unable to resist such impulse is a question to be determined in each individual case, based on all available lay and medical evidence pertaining to his or her mental condition at the time of suicide.

(2) The act of suicide or a bona fide attempt is considered to be evidence of mental unsoundness. Therefore, where no reasonable adequate motive for suicide is shown by the evidence, the act will be

considered to have resulted from mental unsoundness.

(3) A reasonable adequate motive for suicide may be established by affirmative evidence showing circumstances which could lead a rational person to self-destruction.

(c) *Evaluation of evidence.* (1) Affirmative evidence is necessary to justify reversal of service department findings of mental unsoundness where Department of Veterans Affairs criteria do not otherwise warrant contrary findings.

(2) In all instances any reasonable doubt should be resolved favorably to support a finding of service connection (see § 3.102). 38 C.F.R. § 3.302.

In his brief and in oral argument, the appellant asserts that section 3.302 specifically provides for service connection for mental unsoundness as a result of the act of suicide or a bona fide attempt at suicide absent a reasonable adequate motive. Secretary's Br. at 15. The Secretary, however, asserts that section 3.302 does not provide service connection for mental unsoundness. Secretary's Memorandum (Mem.) at 1. Rather, the Secretary asserts that the regulation (1) defines willful misconduct in suicide as the intent to commit the act, and thus serves as a guide as to what constitutes willful misconduct under 38 U.S.C. §§ 1110, 1131, and 1310; (2) establishes a presumption of evidence of mental unsoundness (that only negates willful misconduct) as a result of the act of suicide or a bona fide attempt at suicide that can be overcome by affirmative evidence showing a reasonable adequate motive; and (3) does not permit service connection for "mental unsoundness" unless all other statutory and regulatory criteria for service connection are satisfied. Secretary's Mem. at 1, 10, and 11. In response to the Secretary's memorandum, the appellant maintains that section 3.302, first, creates a new entitlement to benefits for mental unsoundness as a service-connectable disorder as a consequence of the act of suicide, or the bona fide attempt at suicide absent a reasonable adequate motive; and, second, directs a conclusion of direct service connection for mental unsoundness if there has been the act of suicide or the bona fide attempt at suicide absent a reasonable adequate motive. Secretary's Mem. at 2.

■■■ As this Court has previously held, section 3.302 provides that suicide is evidence of mental unsoundness and, absent a reasonable adequate motive, is considered to be the result of mental unsoundness. *Sheets v. Derwinski,* 2 Vet.App. 512, 516 (1992). Although the parties agree as to the basic interpretation of the regulation, the issue presented for our resolution is whether section 3.302 provides for direct service connection for "mental unsoundness" evidenced by suicide or a bona fide attempt absent a reasonable adequate motive.

■■■ As a prerequisite for a finding of service connection for a mental disability, that disability must be recognized by or analogous to those conditions listed in 38 C.F.R. § 4.132 and must either have been incurred in or aggravated by service or must be a psychosis which became manifest within one year after the date of separation from service to a 10% degree of disability. *See* 38 U.S.C. §§ 1110, 1112(a)(1); *Warren v. Brown,* 6 Vet. App. 4, 5 (1993). As a consequence, we hold that "mental unsoundness" in section 3.302, not further defined by any statute or regulation, is a generic term that necessarily includes both service-connectable (i.e., ratable) mental disabilities as well as disorders, such as personality disorders, for which service connection may not be granted under the ratings schedule, and that "mental unsoundness" has not been established as a service-connectable disorder. Rather, section 3.302 establishes presumptions concerning mental unsoundness as a result of the act of suicide or a bona fide attempt that negate willful misconduct. Section 3.302 also provides that the act of suicide or a bona fide attempt is additional evidence, in support of any other evidence offered, that the veteran was suffering from a mental disorder that may or may not be service connected. *Sheets,* 2 Vet.App. at 516. Service connection under the rubric of "mental unsoundness," presumed to be the result of suicide or a bona fide attempt, may be granted only where there is present a service-connectable disability and all the requirements for service connection are established. *See Warren,* 6 Vet.App. at 5.

In the present case, the record contains no evidence that the appellant (1) was diagnosed with a compensable psychosis within one year after his discharge, *see* 38 C.F.R. §§ 3.307, 3.309 (1994), or (2) has a mental disability listed in 38 C.F.R. § 4.132, which was incurred in or aggravated by service. Assuming, *arguendo,* that the appellant's in-service, self-inflicted wounds were the result of a bona fide attempt at suicide absent a reasonable adequate motive, section 3.302 provides a presumption that this would be evidence of mental unsoundness, but not necessarily evidence of a service-connectable mental disability. 38 C.F.R. § 3.302(b)(2). Absent evidence—existing at the time of the May 1981 RO decision which is alleged to have resulted in CUE—linking the appellant's disability with service, a failure to consider the appellant's CUE claim in light of section 3.302 is not prejudicial to the appellant. *See* 38 U.S.C. § 7261(b); *Fugo,* supra.

We find immaterial the appellant's assertion that the BVA breached its duty to assist by failing to obtain independent medical evidence analyzing the possibility of service connection for his schizophrenia because absent new and material evidence to reopen or absent evidence of record that such medical evidence could lead to the development of new and material evidence, the duty to assist in this manner never attached to the appellant's claim. *See* 38 U.S.C. §§ 7104(b), 5107(a); *cf. Ivey v. Derwinski,* 2 Vet.App. 320, 322–23 (1992); *White v. Derwinski,* 1 Vet.App. 519, 521 (1991); *compare* 38 C.F.R. § 3.159 (1994) (Secretary shall assist claimant in obtaining existing records) *with* 38 C.F.R. § 3.304(c) (1994) (development of evidence will be accomplished when deemed necessary). The record contains no indication that an examination or an independent medical opinion would plausibly lead to the development of new and material evidence. It is pure speculation that such efforts would produce evidence connecting the appellant's schizophrenia with his mental problem in service. Additionally, we find unpersuasive the appellant's assertion that he was misdiagnosed with a personality disorder in service, because there is no medical evidence in the record to support such a conclusion. *See Espiritu v. Derwinski,* 2 Vet.App. 492 (1992).

Accordingly, the failure to address the appellant's assertion that he was misdiagnosed also constitutes nonprejudicial error. Finally, given the holding in *Robinette,* the Court notes that, even assuming that the Secretary might have a duty under 38 U.S.C. § 5103(a) to notify an appellant that certain medical evidence must be submitted in order to have his claim reopened, the facts here do not satisfy the *Robinette* criteria. The appellant gave no indication that any relevant evidence existed which could have been deemed "new and material" under 38 U.S.C. § 5108, but which had not been submitted with the application. Thus, because the record does not reflect that VA was on notice of any evidence linking the appellant's schizophrenia to his previously diagnosed personality disorder, we conclude that the Secretary could not have had a section 5103(a) duty to notify the appellant regarding the production of any such additional evidence. *See Robinette,* 8 Vet.App. at 79–80 (holding that nature and extent of section 5103(a) duty depends on evidence that has been submitted in support of a particular claim and evidence of which VA has notice).

The decision of the BVA is AFFIRMED.