**Louis R. ROBINETTE, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–985.

United States Court of Veterans Appeals.

July 14, 1995.

Linda E. Blauhut and Michael P. Horan, Washington, DC, were on the pleadings, for appellant.

Mary Lou Keener, Gen. Counsel; Norman G. Cooper, Asst. Gen. Counsel; David W. Engel, Deputy Asst. Gen. Counsel; and Michael P. Butler, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge:

On September 12, 1994, the Court issued an opinion vacating the Board of Veterans' Appeals (BVA or Board) decision in this case and remanding the matter to the Board for further proceedings pursuant to 38 U.S.C. § 5103(a). The Secretary filed a timely motion for reconsideration, with five attached exhibits. On October 21, 1994, the Court granted the Secretary's motion and ordered that that part of the Court's opinion remanding the matter under section 5103(a), and the entry of judgment, be held in abeyance pending further order of the Court. On November 8, 1994, counsel for the appellant entered

her appearance for the formerly pro se appellant, and on December 2, 1994, the Court ordered the appellant to respond to the Secretary's motion. The appellant responded on January 17, 1995. On March 30, 1995, and April 7, 1995, the Secretary and the appellant, respectively, filed supplemental memoranda, in response to a March 21, 1995, Court order directing that the parties inform the Court whether the Secretary's motion for reconsideration had become moot. Neither party contends that it has. The Court agrees.

The motion for reconsideration and the appellant's response having been considered by the Court, and the motion for reconsideration having been granted in the respects described above, the Court vacates its September 12, 1994, opinion, and issues this opinion in its stead. The Court notes that this opinion does not differ in result from the vacated opinion, although the analysis as to the nature and extent of the Secretary's obligation under section 5103(a) has been revised.

The appellant, veteran Louis R. Robinette, appealed pro se from an August 26, 1993, Board decision denying entitlement to service connection for diabetes mellitus [hereinafter diabetes]. The appellant moved to remand the case for further development, and the Secretary moved to dismiss the appeal on the ground of lack of a well-grounded claim. This case presents the Court with three related questions: (1) Whether this claim was well grounded when only "hearsay" medical evidence (the appellant's statement as to what his physician told him) was offered to show a nexus between the current disability and the appellant's period of service; (2) whether, in view of the Court's finding that this claim was not well grounded, the Secretary nevertheless owed a duty to the appellant; and (3) whether, under the particular facts of this case, the Secretary fulfilled that duty to this appellant. For the reasons that follow, the Court holds (1) that this claim was not well grounded and that hearsay medical evidence, as transmitted by a layperson, cannot be, and is not in this case, sufficient to render a claim well grounded; (2) that, pursuant to 38 U.S.C. § 5103(a), the actions required by the Secretary under that statutory provision depend upon the facts of each case, and that the Secretary owed a duty to this appellant under the circumstances present in this case; and (3) that, here, the Secretary did not fulfill that duty. Accordingly, the Court will remand the matter to the Board for further proceedings in accordance with section 5103(a) and this opinion.

## I. Background

The veteran served on active duty in the United States Air Force from May to September 1948 and from September 1949 to June 1963. Record (R.) at 9, 19. His service records are missing and presumed destroyed by a 1973 fire at the National Personnel Records Center (NPRC). R. at 19. In April 1989, he filed with a Department of Veterans Affairs (VA) regional office (RO) an application for compensation or pension (C & P), stating that he had incurred, inter alia, diabetes in October 1967. R. at 15.

The record contains a January 1989 VA medical center (MC) discharge summary that stated, as part of the veteran's past medical history: "AODM [adult-onset diabetes mellitus] for greater than five years, currently ... maintained on insulin." R. at 48. A February 1989 VAMC discharge summary stated: "Adult onset diabetes, managed by pills for 10 years, now on insulin for 3 years." R. at 46. A May 1989 VAMC discharge summary stated, under the heading "past medical history", as follows: "[AODM] since 1967. Has been on insulin treatment for the past four years." R. at 23. In August 1989, a VARO denied a claim for service connection for a shoulder disability and for non-service-connected pension; the decision listed diabetes under the non-service-connected disabilities. R. at 38–39.

In a January 1990 letter to the RO, the veteran asserted that he had first been afflicted with diabetes while in service. He stated that the condition was first diagnosed four years after his discharge, at the Kaiser Permanente Hospital [hereinafter Kaiser] in San Francisco, through the use of a computer. R. at 62. He asserted that the condition "could not be recognized by tests/procedures used by the military". Ibid. "[A]ll the information I am able to obtain indicates the

condition began much earlier by as much as 10 years." *Ibid.* In September 1990, the RO denied the claim, finding that diabetes was not shown until many years after service and stating: "On May 8, 1990, the veteran was requested to furnish evidence of the existence of diabetes to a compensable degree within one year after service. He has not responded to this request." R. at 69.

In October 1990, the veteran filed a Notice of Disagreement (NOD) asking the RO where records of his June 1963 discharge physical conducted at Travis Air Force Base would be kept; he also requested a copy of his "DD 201 file[,] both personal and divisional". R. at 72.

In November 1990, the RO received from an unidentified source treatment notes and records, dated from September 1971 through November 1974, kept by Dr. Merton Shelton, a private physician. R. at 75–90. Those records contain the following November 1973 notation: "Used Orinase 1957 [this apparently should be 1967, *see* R. at 103]. Recovered after 6 months. D[ischarge]d at Kaiser Hosp[ital].... Rx: DBI." R. at 87. (Orinase is a brand of tolbutamide, an oral anti-diabetes agent. DBI is a trade name for phenformin hydrochloride, an oral medication for treatment of diabetes. PHYSICIANS' DESK REFERENCE 1463, 731 (26th ed. 1972).) A December 1973 insurance company "Diabetic Questionnaire" completed by Dr. Shelton stated that the veteran's diabetes had been first discovered in November 1973. R. at 84. According to a July 1974 letter from Dr. Shelton to another insurance company, he had seen the veteran since September 1971 and a May 1972 urinalysis on the veteran was "normal and free of glycosuria". R. at 77. Dr. Shelton further reported:

> In November of 1973 the patient appeared with a red patchy dermatosis.... He gave a history of having been on Orinase, as prescribed by [Kaiser], and had recovered after about six months. A glucose tolerance test was run at that time revealing a fasting sugar of 128; one-half hour 193; one hour 269; with 2 ± glycosuria....

Blood sugar of 107 in January of 1974 indicated good response to treatment with DBI T–D.

*Ibid.*

The RO subsequently obtained treatment records, dated October 1967 to September 1970, from Kaiser. R. at 92–104. An October 1967 entry noted laboratory findings of increased glycosuria and blood glucose and stated a diagnostic impression of "R[ule] O[ut] DM". R. at 93–94. However, when in November 1967 "clinical diabetes by G[lu-cose] T[olerance] T[est]" was noted, Orinase was prescribed. R. at 94. A September 1970 letter from Dr. Alan Cooper of Kaiser to an insurance company stated that the veteran's condition had been followed by Kaiser since August 1964. Dr. Cooper listed the various ailments for which the veteran had been seen; diabetes was not mentioned, but it was noted that the veteran had been placed on Orinase in November 1967 and that in October 1969 Dr. Cooper had recorded a diagnostic impression of "slightly elevated post-prandial blood sugars". R. at 103–04.

The veteran stated in a November 1990 letter to the RO that he had not received a reply to his October 1990 NOD (inquiring about location of his records); he requested copies of morning reports, safety records, and base newspapers from the Thule Air Force Base in Greenland. These items, he stated, would indicate that he had been admitted to the base hospital there. (It appears that this admission related to a claim for shoulder injury.) With his letter he apparently enclosed the Kaiser medical records appearing at R. 92–104. His letter stated:

> I again ask: Am I on any type of time constraints? Do you acknowledge the existance [sic] of the diabetes and the bursitis/arthritis?? Do you require further physicals to establish percentage of disability?

R. at 106–08.

In December 1990, the RO issued a Statement of the Case (SOC). R. at 110–15. That same month, in his Form 1–9 (Appeal to the BVA), the veteran requested an extension of time to obtain data from the NPRC. R. at 117. He stated that he would forward

any reply he received from the NPRC and that the data would substantiate a 1959 in-service right-shoulder injury and "further show that no tests were made [in service], designed to detect diabetes ... [,] i.e. glucose tolerance." R. at 118; Supplemental (Suppl.) R. at 2–3. He stated that he had read in "current diabetes magazines" that diabetes could exist for 10 years prior to detection. Suppl.R. at 2. He further inquired still again: "Do you require a current test of any kind to verify shoulder condition or presence of diabetes[?]". R. at 118; Suppl.R. at 3.

In March 1991, the RO received clinical records, dated January 1959, from the Air Force Hospital in Thule, Greenland, documenting treatment for a brachial-plexus contusion, but making no mention of testing for diabetes. *See* R. at 120–25. In October 1991, the RO issued a Supplemental SOC.R. at 134–37. In a November 1991 letter to the RO, the veteran requested a delay in order to receive responses to his requests for "additional evidence from [the NPRC] and Private Sources". R. at 151. The letter stated, inter alia:

> The records at Kaiser ... indicate when I was found to have Adult Onset Diabetes. This is a very slow insidious process. To illustrate, I was able to maintain control for almost 18 years by diet and oral medication. The time from discharge was slightly over 4 years. Adult onset diabetes has a direct correlation with the weight of the individual. While current information cannot pinpoint the exact beginning of diabetes unless a trauma occurs[,] my Doctor feels I most certainly had Diabetes MORE tha[n] one year previous to discovery and "MOST PROBABLY" had it at time of discharge because of the overweight condition at that time[ ] (recorded on DD 214).

R. at 154. The veteran's DD 214 ("Certificate of Release or Discharge From Active Duty") lists his weight as 218 and his height as 6 feet, 0 inches. R. at 9.

In November 1991, the veteran submitted a request for a VA physical examination in connection with his diabetes and shoulder-injury claims. R. at 164. He was given a C & P orthopedic examination in December 1991, R. at 159–61, but apparently no exami-

nation was given for diabetes. That same month he submitted a November 1991 letter from Dianne LeClerc, director of medical records at St. Joseph Hospital in Eureka, California. She stated that the veteran had requested her to have an experienced transcriptionist "read and transcribe information contained in copies of medical records he received from another [unidentified] facility", but that she was unable to accommodate his request "because of the poor quality of the copies." R. at 156. The veteran's letter described the subject records only as "a copy from microfilm". R. at 157. He further stated that the NPRC had replied that "the rest of the records requested[,] i.e.[,] discharge physical etc[.,] were destroyed in the 1973 fire." *Ibid.* In a July 1992 decision, the RO granted service connection for a right-shoulder injury, rated 20% disabling, and again denied service connection for diabetes. R. at 169.

In the August 1993 decision here on appeal (which adjudicated only the diabetes claim), the Board determined, without analysis, that the claim was well grounded and that "all reasonable efforts have been made in helping the veteran prove his claim". R. at 5. The Board found that the first evidence of the veteran's diabetes came four years after discharge in a 1967 diagnosis. R. at 6. As to his claim that the diabetes may have existed for as much as 10 years prior to diagnosis, the Board stated that there was "no evidence to indicate that this was true in the veteran's case." *Ibid.* The Board did not refer to the veteran's November 1990 letter recounting his physician's feeling that his diabetes "MOST PROBABLY" had existed at the time of his discharge, and found that the preponderance of the evidence was against the claim. Ibid.

## II. Analysis

### A. Well–Grounded Claim

**■ 1. Generally applicable law.** Under 38 U.S.C. § 5107(a), "a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." Only when the claim is well grounded does the Secretary have an obligation to "assist such a

claimant in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a). The Court has defined a well-grounded claim as "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of § [5107(a)]." *Murphy v. Derwinski*, 1 Vet. App. 78, 81 (1990). The question whether a claim is well grounded is a question of law subject to de novo adjudication by the Court. *See Grottveit v. Brown*, 5 Vet.App. 91, 92 (1993).

The Court concluded in *Heuer v. Brown*, 7 Vet.App. 379, 384 (1995) (citing *Grottveit*, 5 Vet.App. at 93), that "[w]here the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is required to fulfill the well-grounded-claim requirement of section 5107(a); where the determinative issue does not require medical expertise, lay testimony may suffice by itself." *See also Magana v. Brown*, 7 Vet.App. 224, 227 (1994). *Grottveit* held further that "lay assertions of medical [etiology] cannot constitute evidence to render a claim well grounded under section 5107(a)". *Grottveit*, 5 Vet.App. at 93. In *Moray v. Brown*, 5 Vet.App. 211, 214 (1993), we stated in the context of a claim to reopen a previously disallowed claim:

> If lay assertions of medical causation will not suffice initially to establish a plausible, well-grounded claim, it necessarily follows that such assertions cannot serve as the predicate to reopen a claim under 38 [U.S.C.] § 5108. " 'New and material evidence' is, by its nature, well-grounded, i.e., evidence that, if believed, would provide a 'reasonable possibility' that the outcome would be changed." *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992). Just as the BVA must point to a medical basis other than its own unsubstantiated opinion (*Colvin [v. Derwinski*, 1 Vet.App. 171, 175 (1991) ] ), the veteran cannot meet his initial burden by relying upon his own, or his representative's, opinions as to medical matters. *Grottveit*, [5 Vet.App. at 93]. Nor can the veteran meet the "new and material evidence" burden of 38 [U.S.C.] § 5108 by relying upon such "evidence."

And in *Warren v. Brown*, 6 Vet.App. 4, 6 (1993), the Court further concluded in that same reopening context:

> [A]ny statement of appellant as to what a doctor told him is also insufficient to establish a medical diagnosis. *See Espiritu [v. Derwinski*, 2 Vet.App. 492, 495 (1992) ]. While such a statement may trigger [VA's] duty to assist to contact a physician in an appropriate case, *see Ivey v. Derwinski*, 2 Vet.App. 320 (1992); *White [ (Frank) ] v. Derwinski*, 1 Vet.App. 519 (1991), certainly here, where the doctor's statement is framed in terms such as "could have been," no such duty existed. *See Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992) (doctor's opinion expressed in terms of "may or may not" is not a sufficient basis for a well-grounded claim).

*Warren* also concluded that the statement attributed to the physician was insufficient to be material evidence because "such a statement expressed only in terms such as 'could have been' would not create a reasonable possibility that the outcome would be changed [as is required to be "material" for reopening purposes]" under *Colvin*, 1 Vet. App. at 174. *Warren*, 6 Vet.App. at 6. In any event, because the issue in *Warren* was whether new and material evidence was present to reopen a claim, the *Warren* holding does not necessarily control the outcome of the issue in the present case—whether the medical evidence of etiology required under *Heuer* and *Grottveit* for purposes of satisfying the requirement for submitting a well-grounded claim may be satisfied by the veteran's statement of what a physician told him as to the etiology of the veteran's diabetes.

Subsequent to *Warren*, the Court decided *Flynn v. Brown*, holding that "[t]he rules of hearsay evidence . . . are not applicable to the BVA decision-making process." *Flynn*, 6 Vet.App. 500, 503 (1994). The Court rejected an appellant's argument that the hearsay rule (Fed.R.Evid. 802) should prevent the Board from relying on a written statement by one physician that he had talked to a second physician, a specialist, and that the second physician had expressed his opinion that the veteran's hypertension was not, as the veteran had contended, related to his

service-connected diabetes. The Court held that the second physician's findings, related indirectly through the first physician, provided a plausible basis for the Board's denial of secondary service connection. *Id.* at 503–04, 506. Thus, the Court in *Flynn* accepted as probative, indeed, as determinative, evidence of a specialist physician's statement related through another physician's written statement.

**2.  Use of double-hearsay evidence.** Against this background, we must now determine whether a lay veteran's written statement about what a physician told him can constitute the medical evidence of in-service etiology of a current disability during service that is generally necessary in order for a claim to be well grounded. In the present case, the Board's finding that the claim was well grounded was conclusory; the Board failed to specify the evidence it relied upon in determining that the claim was well grounded, and also failed to mention the hearsay medical evidence. The specific issue here is whether the appellant's November 1991 hearsay statement—"[M]y Doctor feels I most certainly had Diabetes MORE tha[n] one year previous to discovery and 'MOST PROBABLY' had it at time of discharge because of the overweight condition at that time"—can constitute "competent medical evidence" under *Heuer* and *Grottveit,* both *supra.* (Although the veteran did not use the form of a direct quotation ("My doctor said: 'You most probably had diabetes at discharge.'") but stated, rather, what his doctor "felt", his statement is the functional equivalent of the veteran's having quoted his physician's oral or written communication and necessarily implies that the physician made such a statement.) In resolving this question of law, both the nature of the VA adjudication process and the purpose that the well-groundedness evidentiary requirement fulfills in that process must be borne in mind.

■ It is well established that the VA adjudication process is a nonadversarial one. *See, e.g., Flynn,* 6 Vet.App. at 503–04; *Zevalkink v. Brown,* 6 Vet.App. 483, 490 (1994) (en banc) (quoting *Walters v. National Assoc. of Radiation Survivors,* 473 U.S. 305, 333, 105 S.Ct. 3180, 3195–96, 87 L.Ed.2d 220

(1985), as to nonadversarial nature of VA claims process); *Thurber v. Brown,* 5 Vet. App. 119, 123 (1993); *Nagler v. Derwinski,* 1 Vet.App. 297, 301 (1991); *Manio v. Derwinski,* 1 Vet.App. 140, 144 (1991); *Littke v. Derwinski,* 1 Vet.App. 90, 91 (1990); 38 C.F.R. § 20.700(c) (1994) (VA adjudication proceedings not "limited by legal rules of evidence"). The well-grounded-claim requirement applicable in that nonadversarial process resembles the rule applied in civil actions to determine whether a complaint has stated a cause of action—a basis for affording the relief sought—for which purpose the facts alleged are accepted as true. *See Dickson v. United States,* 831 F.Supp. 893, 896 (D.D.C.1993) (for "purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, all factual allegations contained in the complaint are to be construed as true"); *see also Pennell v. City of San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988) ("when standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party'" (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975))); *Jacobs v. Barr,* 959 F.2d 313, 316 (D.C.Cir. 1992). Also instructive is the criminal case-law that expressly permits hearsay evidence to form the basis for indictment, possible incarceration, and subsequent trial, *see Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956); to form part of the basis for a determination of "probable cause" needed to support issuance of a search warrant, *see United States v. Ventresca,* 380 U.S. 102, 107, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965); and to be considered as part of the evidence in making certain preliminary determinations, e.g., the existence of a conspiracy, *see Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2781–82, 97 L.Ed.2d 144 (1987); *United States v. Beckham,* 968 F.2d 47, 50–51 (D.C.Cir.1992).

Consistent with these analogies, this Court in *King v. Brown,* 5 Vet.App. 19, 21 (1993), held that the evidence submitted in support of a claim "must ... be accepted as true for the purpose of determining whether the

claim is well grounded ... [except] when the evidentiary assertion [other than in a government record] is inherently incredible or when the fact asserted is beyond the competence of the person making the assertion." This truth presumption parallels the presumption of credibility which the Court has held must be applied in determining whether evidence is "material" for purposes of reopening, under 38 U.S.C. § 5108, a previously and finally disallowed claim. *Justus v. Principi*, 3 Vet. App. 510, 513 (1992). Borrowing from the analysis in *Justus*, this presumption in the instant case "is made *only for the purpose of determining whether* [the claim is well grounded].... In the adjudication that follows ..., the Board[,] having accepted provisionally [for well-groundedness] purposes the credibility of the ... evidence, then must determine, as a question of fact, both the weight and credibility of [that] evidence". *Ibid.*

■ As our *Murphy/Grottveit/Moray/Heuer* jurisprudence outlined above makes clear, to be well grounded a claim need not be supported by evidence sufficient for the claim to be granted. Rather, the law establishes only a *preliminary* threshold of plausibility with enough of an evidentiary basis to show that the claim is capable of substantiation (if it is not meritorious when initially presented). A vital element of such substantiation is the execution of the Secretary's duty to assist a claimant once a well-grounded claim has been filed under 38 U.S.C. § 5107(a). That duty includes, in appropriate circumstances, the gathering of evidence from VA records, *see Murincsak v. Derwinski*, 2 Vet.App. 363, 372–73 (1992), and private records, *see Littke*, 1 Vet.App. at 92; the conduct of a thorough and comprehensive medical examination, *see Green (Victor) v. Derwinski*, 1 Vet. App. 121, 124 (1991); and the reading of an appellant's claim documents in a liberal manner so as to identify and carry out the required adjudication of all claims that are reasonably raised by the evidence of record whether or not formally claimed in a VA application, *see EF v. Derwinski*, 1 Vet.App. 324, 326 (1991).

■ The threshold of plausibility to make a claim well grounded "is rather low", *White*, 1 Vet.App. at 521, lower than the new-and-material-evidence threshold which a claimant must cross in order to have a previously disallowed claim reopened and readjudicated. Such a reopening claimant has already, presumably, been afforded the benefit of the Secretary's duty to assist in claim development. Our caselaw has long required that a claimant seeking such a *re*adjudication, rather than an original adjudication, have evidence in the record showing that there is "a reasonable possibility" of **changing the outcome on the merits.** *Colvin*, 1 Vet.App. at 174 (1991); *see also Cox v. Brown*, 5 Vet. App. 95, 98–99 (1993). In contrast, the evidentiary threshold to make a claim well grounded does not require that the evidence in the record show "a reasonable possibility" of success on the merits, because the duty to assist has yet to be executed. Such a prior, final merits denial should be understood in the context of the unique evidentiary burdens in the VA adjudication system that permit a merits disallowance only where the evidence preponderates against the claim. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 54 (1990) (construing 38 U.S.C. § 5107(b)).

It follows from *Flynn*'s holding (that evidence of a physician's oral statement related through another physician's written statement can provide a "plausible basis" for the Board to rely upon in denying a claim) that such medical-opinion evidence would likewise be sufficient to make a claim "plausible" or "possible" and "capable of substantiation" for purposes of meeting the requirement of a well-grounded claim as explicated by *Murphy* and *Grottveit*. The law requires VA to consider in adjudicating claims "all pertinent medical and lay evidence", 38 U.S.C. § 1154(a); *see also* 38 C.F.R. § 3.303(a) (1994), and, just as hearsay evidence is part of that evidence in view of the nonadversarial nature of the VA adjudication process, *see, e.g., Flynn, supra,* so would such hearsay evidence recounting medical opinion as to the time of onset of a disability be part of the evidence which could make a claim well grounded, in terms of plausibility and capability of substantiation, thus triggering the

Secretary's duty to assist. *Cf. Costello, Ventresca, Bourjaily,* and *Beckham,* all *supra.*

■ However, that does not end our inquiry for two reasons: First, the evidence here is different from the evidence in *Flynn;* and, second, *Grottveit* required *medical* evidence, as *Warren* stressed. We must apply the above legal principles to the facts of the instant case and decide the question of law whether the evidence here is sufficient to make the veteran's claim well grounded. We hold that it is not. For purposes of applying the well-grounded claim requirement, we are persuaded that *Warren*'s conclusion (that an appellant's statement about what a physician told a lay claimant does not constitute the requisite medical evidence of a medical diagnosis or of medical etiology), made in the reopening context, should also be applied to the lower evidentiary threshold applicable to determining whether an initial claim is well grounded. The question is not whether double hearsay may be used in the VA claims-adjudication process—it can be—but whether *Grottveit*'s medical-evidence requirement can be met by evidence the underlying medical nature of which has been significantly diluted. In *Flynn,* the transmitting individual was himself a physician and was therefore relatively likely to relay the specialist physician's opinion accurately. In contrast, we hold here that the connection between what a physician said and the layman's account of what he purportedly said, filtered as it was through a layman's sensibilities, is simply too attenuated and inherently unreliable to constitute "medical" evidence. Accordingly, since that is the only evidence that could possibly satisfy *Grottveit, supra,* we hold that the claim was not well grounded.

### B. Secretary's Obligation Under Section 5103(a)

In this case, the veteran's statement of what his physician told him put the Secretary on notice of the likely existence of competent medical evidence that would, if true, be relevant to, indeed necessary for, a full and fair adjudication of the claim. Section 5103(a) of title 38, U.S.Code, provides:

If a claimant's application for benefits under the laws administered by the Secretary is *incomplete,* the Secretary shall notify the claimant of the *evidence necessary to complete* the application. If such *evidence* is not received within one year from the date of such notification, no benefits may be paid or furnished by reason of such application.

38 U.S.C. § 5103(a) (emphasis added); *see also* 38 C.F.R. § 3.158 (1994). The Secretary, contrary to the requirement of *Brown v. Gardner,* — U.S. ——, ——, 115 S.Ct. 552, 555, 130 L.Ed.2d 462 (1994), to conduct a textual analysis of the usage of terms in related veterans' benefits statutes, takes a quite narrow view of his duty under this provision. He contends that he must do no more than notify the claimant of what information is needed to "complete" *the claim form*—for example, a social security number. Motion (Mot.) at 3. We do not agree.

■ In our September 1994 opinion in this case, we held that this section imposes an obligation on the Secretary prior to the time when the duty to assist attaches under section 5107(a) (upon the submission of a well-grounded claim), and that in this case that obligation required that the Secretary, having incorrectly ruled that the claim was well grounded, advise "the claimant of the evidence necessary to complete the application"—here, direct medical evidence connecting to his service the onset of his current disability (diabetes). In support of such holding, the Court quoted its opinion in *Morris (John) v. Derwinski,* 1 Vet.App. 260, 264 (1991). In applying section 5103(a) (then section 3003(a)) and its implementing regulation on abandoned claims, 38 C.F.R. § 3.158, the Court in *Morris* stated:

This abandoned claims regulation is entirely consistent with the command of 38 U.S.C. § [5103(a) ] regarding the disposition of incomplete claims. Where the VA notifies a claimant of the need for further evidence and the claimant fails to respond within one year of that notice, the claim is deemed to have been abandoned. In order for the VA to process claims, individuals applying for benefits have a responsibility to cooperate with the agency in the gathering of the evidence necessary to establish allowance of benefits. *This regulation,*

*however, does not permit the VA to sit idly by once a claim has been received. The Secretary is under an affirmative duty to assist claimants in understanding how to file for benefits and what evidence is required. See 38 U.S.C. §§ [7722, 5107(a)].*

(Emphasis added.) As discussed below, the Court today reaffirms its holding as to the existence of a section 5103(a) duty independent of the section 5107(a) duty to assist but, upon reconsideration, revises its analysis so as to make clear that the Secretary's section 5103(a) obligation depends on the particular facts of the case and on the extent to which the Secretary has advised the claimant of the evidence necessary to be submitted with a VA-benefits claim.

**■ 1. Statutory interpretation.** *Gardner* teaches that if there is any ambiguity in the text, the statute must be interpreted in the veteran's favor. *Gardner,* —— U.S. at ——, 115 S.Ct. at 555; *see Allen v. Brown,* 7 Vet.App. 439 (1995) (en banc) (applying the *Gardner* "interpretive doubt" principle in choosing between plausible statutory constructions of 38 U.S.C. § 1110). "In determining the plain meaning of statutory language, 'legislative purpose is expressed by the ordinary meaning of the words used'". *Davis v. Brown,* 7 Vet.App. 298, 301 (1994) (citing *Jones (McArthur) and Karnas v. Brown,* 41 F.3d 634, 638 (Fed.Cir.1994) (quoting *Ardestani v. INS,* 502 U.S. 129, 133–35, 112 S.Ct. 515, 519, 116 L.Ed.2d 496 (1991))). "Congress need not enact a dictionary each time it passes a law. That the language at issue here is not expressly defined in the [statute] does not render ambiguous the plain words used." *Jones and Karnas,* 41 F.3d at 639.

***a. Ordinary meaning of "evidence".*—** The term "evidence" is defined as follows: "something that tends to prove; ground for belief". WEBSTER'S NEW WORLD DICTIONARY, 471 (3rd ed. 1988). Black's Law Dictionary defines "evidence" as follows:

All the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved. Any matter of fact, the effect, tendency, or design of which is to produce in the mind a persuasion of the existence or nonexistence of some matter of fact. That which demonstrates, makes clear, or ascertains the truth of the very fact or point in issue, either on the one side or on the other.

BLACK'S LAW DICTIONARY 555 (6th ed. 1990); *see Jones and Karnas,* 41 F.3d at 638 (Federal Circuit relying upon Black's Law Dictionary for the definitions of "case" and "appeal").

**■** The Secretary's interpretation of the language in section 5103(a) to mean only that the Secretary must help the person "fill in the information required by the blanks on the form," such as a social security number, conflicts with the plain meaning of "evidence". That "evidence" means more than just information to be filled in on the application form, and that an application includes the form plus evidence in support of the claim flows not only from the plain meaning of the term but also from the VA Adjudication Procedure Manual, M21–1 (MANUAL M21–1). The MANUAL M21–1 provides as follows:

**e. Defective or Incomplete Application Forms.** If an application is properly signed but is so incomplete that development for the specific information is not feasible, make a copy of the application and retain it as the file copy. Return the original application to the claimant with a request to complete the indicated items checked in red. Ask the claimant to return it with any other required *evidence.*

MANUAL M21–1, Part III, para. 2.01(e) (Sept. 14, 1992) (last emphasis added).

***b. Contextual use of "application", "form", "evidence", and "information".*—** The key words—"application", "form", "evidence", and "information"—are used repeatedly throughout the eight sections (5101–5108) of subchapter I of chapter 51 of title 38, U.S.Code, the subchapter in which section 5103 appears. The term "form" appears in sections 5101 and 5102, but not in section 5103(a), which uses the term "application" as does sections 5105(a) and 5105(b). The term "evidence" is used five times in sections 5104(b), 5107(a), 5107(b), and 5108, in addi-

tion to twice in section 5103(a). The term "information" appears six times in sections 5105(a), 5105(b), 5106, and 5107(a). Applying the presumption recognized in *Gardner,* we must presume that each of these terms means the same thing when used throughout the same subchapter.

■ Moreover, the Court must read all sections of a statute together so as to yield a coherent and internally consistent result. *See Smith (William A.) v. Brown,* 35 F.3d 1516, 1523 (Fed.Cir.1994) (" 'in expounding [on] a statute, we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law....' " (citing *United States Nat. Bank of Oregon v. Independent Ins. Agents of Am., Inc.,* 508 U.S. 439, ——, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (quoting *United States v. Heirs of Boisdore,* 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1850)); *Smith,* 35 F.3d at 1523. To define "evidence" in a way other than to refer to proof of the claim, and to refer merely to information filled in on an application form, would unreasonably limit the Secretary, in applying sections 5107(a), 5107(b), and 5108, to considering, in adjudication of claims, only the information filled in on the application form. Such an unreasonable interpretation would also then be applicable to BVA adjudications, which are required to be made "upon consideration of all *evidence* and material of record". 38 U.S.C. § 7104(a) (emphasis added).

The Secretary also argues that VA should not be spending "additional scarce resources on non[-]well-grounded claims under the guise of section 5103(a), while well-grounded claims are left waiting development and adjudication." Mot. at 7. The Court notes, however, that proceeding to adjudicate a claim at the RO and then the BVA before the claimant is informed of the specific requisite evidence he is lacking is a far greater waste of resources and may lead as well to a prejudicial delay in the adjudication of the claim. In addition, the Secretary's argument on this point rings hollow in light of VA's adjudication policy, since at least December 27, 1993, of requiring that, when an RO denies a claim as not well grounded, the RO's rating decision or notification letter to the claimant "must clearly explain why the specific issue(s) raised is not considered well[ ]grounded" and "why further action on the claim is not being taken by the [RO]." Letter from J. Gary Hickman, Director, Compensation and Pension Service to Director, VARO (Dec. 27, 1993), paras. 4 and 7, attached at appendix B to Appellant's Suppl.Memorandum (Mem.). VA's Compensation and Pension Service has recently reaffirmed "the policy stated in the letter to ROs of December 27, 1993". BVA Circular 21–94–2, Change 1, Appendix A, Part 3 (Oct. 6, 1994) at A–10, attached at appendix A to Appellant's Suppl. Mem.

*c. Meaning of "complete" and "incomplete".*—Hence, the Court reaffirms that section 5103(a) imposes more of an obligation on the Secretary than merely to advise of the need to "complete" all blanks on the claim form. However, the nature and extent of that further obligation will depend on what evidence VA in a particular case has advised the claimant is necessary to be submitted with a VA-benefits claim and what evidence he submitted or did not submit. *See* 38 U.S.C. §§ 5102, 7722(a) and (c).

■ *2. Secretary's obligations applied to Robinette facts.* The Secretary supports his contention that any section 5103(a) duty that existed had been fulfilled in this case by the information provided on VA forms, instructions, and letters furnished to the veteran and refers to the five exhibits attached to his motion. Mot. at 4. He states that VA Form 21–526 (Application for Compensation or Pension) instructed the veteran to relate information pertinent to his claim for direct service connection, including:

(1) the nature of his illness and when it began [item 24 of the form]; (2) whether he had been hospitalized or furnished domiciliary care, the dates of care, and the name and address of the institutions [items 25A, B, C]; (3) the nature of his illness during service, dates of treatment, and the facilities where he received treatment [items 26A, B, C]; (4) names, addresses, and dates of civilian treatment [items 27A–D]; and (5) names, addresses, and dates regarding persons, other than physicians,

who had knowledge of his disability [items 28A–D].

Mot. at 5, Exhibit (Exh.) 1; *see* R. at 15–16. The Secretary also states that the form advised the veteran to read the attached instructions, which he states included, inter alia, "instructions regarding submission of service medical records and evidence from a doctor or nursing home". Mot. at 5. As part of Exhibit 1, the Secretary attached the instructions as well as the application. Exh. 1. (Although the Secretary submitted an October 1993 application form and the veteran used a September 1984 form, *see* R. at 14–17, the Court finds no substantive difference between the application forms on this point.) In addition, the Secretary contends that VA in this case sent the veteran "correspondence that directed him to provide (1) information concerning medical treatment in service (Exhibits 2 and 3)", (2) "evidence showing diabetes to a compensable degree within one year of service (Exhibit 4)", and (3) *evidence "show[ing] that the condition was incurred in or aggravated by military service,* and the condition is chronic in nature or residuals of the disability currently exist. *See* Exhibit 5." Mot. at 5–6 (emphasis added). The third directive is found in the September 1990 RO denial of his claim.

The Court finds the Secretary's foregoing summary of the exhibits to be accurate. It is against that background of specific advice and claims assistance that it must be determined whether the Secretary complied with his section 5103(a) duty in this case. Based on the veteran's November 1991 statement regarding what he had been told by a treating physician, his application for service-connected disability compensation was incomplete under section 5103(a). Under the circumstances of this case, the Secretary was on notice that relevant evidence may have existed, or could have been obtained, that, if true, would have made the claim "plausible" and that such evidence had not been submitted with the application. Thus, upon receipt of the hearsay statement from the veteran, the Secretary had an obligation under section 5103(a) "to assist [the] claimant[ ] in understanding how to file for benefits and what evidence is required", *Morris, supra,* by advising him that the physician's statement was needed to "complete" his application.

**3. Remedy.**—Hence, remand for the Secretary to comply with his section 5103(a) duty, in light of the specific advice and assistance provided and not provided by the Secretary, is required on the facts before us. Then, if the veteran, on remand, submits medical evidence sufficient to make the claim well grounded, the Secretary will be obligated to fulfill his duty to assist under section 5107(a), including to provide the comprehensive examination which the veteran requested (one in which all medical records are considered and an opinion is sought on the likelihood that the veteran had diabetes during service, *see Wilson (Lawrence) v. Derwinski,* 2 Vet.App. 16, 21 (1991)). *See Green, supra.*

### III. Conclusion

On consideration of the record and the pleadings of the parties, the Court denies the Secretary's motion to dismiss the appeal and stay proceedings. The Court grants in part the appellant's motion for remand and vacates the August 26, 1993, BVA decision and remands the matter for further proceedings in accordance with applicable law and regulation, all consistent with this opinion. On remand, the veteran is free to offer additional evidence and argument on the remanded claim. *See Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). The Court directs that the appendix to the Secretary's October 11, 1994, motion be deemed a second supplemental record on appeal and be filed as of the date on which the appellant's response (raising no objection as to the existence or authenticity of such exhibits but only as to their fulfillment of the section 5103(a) duty) was filed, January 17, 1995. This decision of the Court vacating the BVA decision has the legal effect of nullifying the merits adjudications by the RO in July 1992 and September 1990 as to the veteran's claim for service connection for diabetes, because those underlying decisions, having been timely appealed to the BVA and thus never having become "final" under 38 U.S.C. § 7105(c), were subsumed in the BVA's August 1993 decision. *See Landicho v. Brown,* 7 Vet.App. 42, 52 (1994) ("underlying [unfavorable] RO decision had been subsumed in the BVA decision here on appeal"); 38 C.F.R. § 20.1104 (1994) (BVA de-

cision affirming RO decision subsumes the latter decision).

The proceedings on remand shall be carried out in accordance with the Veterans' Benefits Improvements Act of 1994, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (requiring Secretary to ensure "expeditious treatment" for claims "remanded" by BVA or the Court); the February 16, 1995, Memorandum from J. Gary Hickman, Director, Compensation and Pension Service to Director, VA Regional Offices, submitted in *Bond v. Brown,* U.S.Vet.App. No. 93–146 (notifying RO Directors of "Priority Handling of Remanded Appeals by the Court of Veterans Appeals or the [Board]" and requiring that "[a]djudication management[ ] ensure that all Court/BVA remanded cases are properly and timely handled upon receipt"); and MANUAL M21–1, Part IV, paras. 38.02, 38.03 (providing for BVA and ROs to follow flagging procedure to afford "[s]pecial handling ... for all cases remanded by the Court"). A final decision by the Board following the remand herein ordered will constitute a final decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with this Court not later than 120 days after the date on which notice of that new decision is mailed to the appellant.

VACATED AND REMANDED.