Citation Nr: 1206483 
Decision Date: 02/22/12 Archive Date: 03/01/12

DOCKET NO. 09-03 542A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a cervical spine disability.

2. Entitlement to an initial rating in excess of 50 percent for an acquired psychiatric disorder.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

A. Fagan, Associate Counsel




INTRODUCTION

The Veteran served on active duty from February 1966 to December 1968.

This matter comes before the Board of Veterans' Appeals (Board) from a May 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, which denied service connection for a neck injury.

In his substantive appeal, the Veteran requested a hearing before the Board. He subsequently withdrew that hearing request in a written statement dated in January 2010. 38 C.F.R. § 20.704 (2011). Therefore, the Board will proceed with adjudication of this appeal.

The issues of entitlement to service connection for a heart condition, a right hand disability, and a right elbow disability, and the issue of entitlement to a total disability rating based on individual unemployability, have been raised by the record, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over those issues and they are referred to the AOJ for appropriate action. 

The appeal is REMANDED to the RO via the Appeals Management Center in Washington, D.C. 


REMAND

Although the Board regrets the delay, additional development is needed prior to further disposition of the Veteran's claim for service connection for a cervical spine disability.

The Veteran contends that his current cervical spine disability arose from an in-service incident in which a hatch fell on his head, causing injury to his chin and his neck.

Service medical records show that in March 1967, the Veteran was treated for injury to his chin that occurred when a hatch on a track fell onto his head while his chin was sitting on top of the track. He sustained a deep laceration of the chin for which he was given sutures. He did not complain of any neck pain at that time. Thereafter, an October 1967 physical examination found the Veteran to be physically qualified to perform all duties without limitations in a non-commissioned officer status. The Veteran's service medical records, including his December 1968 separation examination, are otherwise negative for any complaints, diagnoses, or treatment related to neck or cervical spine problems.

VA medical records after service dated as early as December 2004 show the Veteran's past medical problems to include a diagnosis of cervical disc disease. However, physical examination at the time revealed the neck to be supple, nontender, and without masses, bruits, or jugular vein distention. No diagnosis pertaining to the neck was offered at that time. Subsequent VA medical records are silent for neck or cervical spine complaints until July 2007, at which time the Veteran complained of neck pains, and an impression was offered of cervical disc disease. The Veteran thereafter underwent physical therapy from August 2007 to September 2007 for cervical spine pain, and a September 2007 x-ray showed degenerative change and mild anterior loss of height at C5, which could be secondary to previous fracture or to degenerative changes. Additionally, an August 2007 VA medical record suggests that the Veteran underwent physical therapy for neck pain in 2003. However, there are no medical records dated prior to December 2004 showing diagnosis or complaints related to neck or cervical spine problems.
 
The Veteran was afforded a VA examination in December 2008 in which he complained of pain, stiffness, and spasms in his neck. The Veteran claimed that his neck injury was related to the incident in service in which a track fell on his head and caused him to required stitches in his chin. The Veteran denied having any x-rays of the cervical spine in service. However, it was noted that the Veteran had been on pain medication since 1998 and that x-rays of the cervical spine in 2003 showed degenerative joint disease. The Veteran also reported physical therapy in 2008 with improvement in symptoms. Regarding current treatment, the Veteran reported outpatient physical therapy, traction, and muscle relaxants.

Physical examination revealed cervical spine range of motion within normal limits but with evidence of pain with motion. Reference was made to the September 2007 x-rays findings of degenerative change in the cervical spine. Based on a review of the claims folder and the physical examination, the examiner diagnosed cervical spine degenerative joint disease. Initially, the examiner indicated that he could not resolve the issue of nexus without resorting to mere speculation. However, in the rationale for the opinion given, the examiner then stated that the Veteran's recent diagnosis of degenerative joint disease of the cervical spine was less likely a result of neck injury that occurred in 1967. The examiner noted that in 1967, when the track fell on the Veteran's head, the main problem was a chin wound that required stitches, and that there were no further problems with the neck. Nor did the Veteran have any x-rays of his neck while in the military. Furthermore, the examiner noted that the Veteran did not start to complain of neck pain until 1998, after he left service.

Thereafter, in a July 2010 private opinion, the Veteran's chiropractor indicated that many of the Veteran's disabilities, including his cervical spine disability, were more likely than not related to his military service. The chiropractor noted the Veteran's in-service head injury caused by the hatch of a tank forcing his head and face downward, causing injury to his chin. The chiropractor also noted the Veteran's complaints of localized cervicothoracic spine pain that had been constant and varying in degree since the accident. Physical examination revealed ranges of motion that were approximately 50 percent of the expected normals for the Veteran's age range. Foraminal compression was positive for increased cervicothoracic spine pain, and on palpation, there were areas of hypertonicity of the deep musculature from C5 to T1. The chiropractor diagnosed posttraumatic cervicothoracic spondylosis with attending cervicalgia and opined that the condition was more likely than not directly and causally related to the accident in service. However, the chiropractor did not provide any rationale for the opinion.

VA's duty to assist includes a duty to provide a medical examination or obtain a medical opinion where it is deemed necessary to make a decision on the claim. 38 U.S.C.A. § 5103A(d) (West 2002); 38 C.F.R. § 3.159(c)(4) (2011); Robinette v. Brown, 8 Vet. App. 69 (1995). The Board recognizes that the Veteran has already a undergone a VA examination with respect to his cervical spine claim. However, the examiner indicated that the issue of nexus could not be resolved without resorting to mere speculation. In addition, new evidence has been received since that examination which suggests a relationship to service. It therefore remains unclear to the Board whether any currently diagnosed cervical spine disability is related to service. 

In view of the service medical records showing that the Veteran injured his chin when hit on the head with a hatch in service, and his credible testimony that he has suffered from cervical spine problems since that time, the Board finds that an additional VA examination and etiological opinion is necessary in order to fully and fairly assess the merits of his claims. 

Next, VA medical records appear to be outstanding. As previously indicated, the earliest available VA treatment note is dated in December 2004. However subsequent VA medical records reference treatment for cervical spine problems prior to December 2004. Additionally, in a December 2007 authorization to release information, the Veteran indicated receiving treatment at the Orlando VA Medical Center from as early as 1998.

Finally, the Board observes that in a January 2009 rating decision, the RO granted service connection for PTSD and assigned an initial 50 percent disability rating. Thereafter, in a September 2009 written statement, the Veteran expressed disagreement with the rating assigned for his PTSD. The Board finds that the Veteran's September 2009 written statement constitutes a timely notice of disagreement with the January 2009 rating decision. 

Where a notice of disagreement has been timely filed with regard to an issue, and a statement of the case has not been issued, the appropriate Board action is to remand the issue for issuance of a statement of the case. Manlincon v. West, 12 Vet. App. 238 (1999). Accordingly, the Board finds that the RO should issue a statement of the case that addresses the Veteran's claim for an increased initial rating for PTSD. 

Accordingly, the case is REMANDED for the following action:

1. Obtain the Veteran's treatment records from the VA facility in Orlando, Florida, from 1998 to present.

2. Issue a statement of the case that addresses the issue of entitlement to an increased initial rating for PTSD. That statement of the case should inform the Veteran of his appeal rights and that he must perfect an appeal if he desires appellate review of that issue. 

3. Then, schedule the Veteran for a VA examination to determine the etiology of any cervical spine disability. The examiner must review the claim file and should note that review in the report. The examiner should specifically review the service medical records of an accident where the Veteran was struck on the head with a hatch, the December 2008 VA examination, the July 2010 private opinion, and the Veteran's medical history during and since service. The examiner should provide an opinion, supported by a rationale, as to whether that it is at least as likely as not (50 percent probability or greater) that any current cervical spine disability is related to the Veteran's service or to the incident in service when he was struck on the head with a hatch.

4. Then, readjudicate the claim on appeal. If any decision is adverse to the Veteran, issue a supplemental statement of the case and allow the appropriate time for response. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



_________________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2010).