Citation Nr: 1504651 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 12-35 484 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah


THE ISSUES

1. Entitlement to service connection for hypertension, to include as secondary to service-connected type II diabetes mellitus.

2. Entitlement to service connection for a kidney disability, to include as due to exposure to herbicides and as secondary to service-connected type II diabetes mellitus.


ATTORNEY FOR THE BOARD

Michael Sanford, Associate Counsel



INTRODUCTION

The Veteran served on active duty from March 1959 to September 1967.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions dated April 2011 and May 2012 of Department of Veterans Affairs (VA) Regional Offices (ROs) in Salt Lake City, Utah.

This matter was last before the Board in March 2014, when it was remanded for further evidentiary development. As will be discussed in greater detail below, regarding the issue of entitlement to service connection for hypertension, a review of the claims file reveals substantial compliance with the Board's March 2014 remand directives. See Stegall v. West, 11 Vet. App. 268 (1998).

Unfortunately, the issue of entitlement to service connection for a kidney disability is again REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

Hypertension is not related to active service, did not manifest within one year of separation from service, and is not caused or aggravated by service-connected type II diabetes mellitus.


CONCLUSION OF LAW

The criteria for entitlement to service connection for hypertension are not met. 
38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2014).




REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

When VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). See also Quartuccio v. Principi, 16 Vet. App. 183 (2002); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Dingess v. Nicholson, 19 Vet. App. 473 (2006).

VA's duty to notify has been satisfied through a notice letter dated June 2011 which fully addressed all notice elements. This letter informed the Veteran of what evidence was required to substantiate his claims for service connection, the Veteran's and VA's respective duties for obtaining evidence, and the process by which disability ratings and effective dates are assigned. The Veteran was afforded a meaningful opportunity to participate effectively in the processing of his claim and given ample time to respond. The Board, therefore, finds that all notices required by the Veteran Claims Assistance Act (VCAA) and implementing regulations were furnished to the Veteran and that no useful purpose would be served by delaying appellate review to send out additional VCAA notice letters.

VA must also make reasonable efforts to assist the Veteran in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

Service treatment records are associated with the claims file. All post-service treatment records and reports identified by the Veteran have also been obtained. The Veteran was afforded a VA examination in June 2014. The Board finds that the June 2014 examination is adequate for rating purposes as the examiner solicited pertinent history from the Veteran, reviewed the claims file, examined the Veteran, and provided an opinion as to direct and secondary service connection with thorough supporting rationales. There is no argument that the examination or etiological opinions are somehow inadequate.

The Board is also satisfied that substantial compliance with the Board's March 2014 remand instructions has been achieved. The RO sought information regarding outstanding treatment records and advised the Veteran of his right to submit an etiological opinion. Likewise, the Veteran was afforded a VA examination in June 2014, as detailed above. As such, substantial compliance with the Board's March 2014 remand instructions has been achieved. See Stegall, supra.

In light of the foregoing, the Board is satisfied that all relevant facts have been adequately developed to the extent possible; no further assistance to the appellant in developing the facts pertinent to the issue on appeal is required to comply with the duty to assist. 38 U.S.C.A. §§ 5103 and 5103A; 38 C.F.R. § 3.159.

Analysis

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). To establish service connection, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

Certain chronic diseases, including hypertension, may be presumed to have been incurred in or aggravated by service if manifest to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1112, (West 2002); 38 C.F.R. §§ 3.307, 3.309 (2014). 

Service connection may also be established if the evidence of record shows that a chronic disorder has been caused or aggravated by an already service-connected disability. 38 C.F.R. § 3.310 (2014); Allen v. Brown, 7 Vet. App. 439 (1995).
Additionally, if a Veteran was exposed to an herbicide agent during active service, certain diagnosed disabilities shall be service connected, if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even if there is no record of such disabilities service. 38 C.F.R. § 3.309(e) (2014). Although the Veteran is presumed to have been exposed to herbicides during service (see 38 U.S.C.A. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii)), hypertension is not among the disabilities which service connection can be presumptively service connected due to exposure to herbicides. However, the Veteran is not precluded from establishing service connection on a direct basis. See Combee v. Brown, 34 F.3d 1039, 1043-44 (Fed. Cir. 1994). 

Here, regarding direct service connection, the evidence is against the Veteran's claim. A review of the Veteran's service treatment records does not reveal any complaints of hypertension or high blood pressure. Indeed, the Veteran was not diagnosed with hypertension until 1996, see June 2014 VA Examination Report, nearly 40 years following the Veteran's separation from service. The Veteran points to no in-service incident or occurrence where hypertension was incurred.

The Veteran was afforded a VA examination in June 2014. There, the examiner, who noted the Veteran's exposure to herbicides in service, concluded that it was less likely than not that hypertension was related to active duty. As rationale, the examiner explained that the Veteran's service treatment records were completely silent for hypertension or elevated blood pressure readings. Likewise, the examiner explained that it was some 30 years between the Veteran's separation from service and his diagnosis of hypertension. As the examiner offered a clear opinion with a supporting rationale, the Board affords the June 2014 VA examiner's opinion great probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet.App. 120, 124 (2007).

Regarding presumptive service connection under 38 C.F.R. §§ 3.307, there is no evidence that hypertension developed within one year of the Veteran's separation from service. As noted above, the Veteran did not develop hypertension until 1996, see June 2014 VA Examination Report, several decades following service. The evidence does not show that the Veteran developed hypertension within one year of his separation from service and the Veteran does not argue such. As such, presumptive service connection under 38 C.F.R. §§ 3.307 is not warranted.

Turning to secondary service connection, the evidence is also against the Veteran's claim. The June 2014 VA examiner concluded that it was less likely than not that the Veteran's hypertension was caused or aggravated by his service connected type II diabetes mellitus. The examiner explained that the Veteran was diagnosed with type II diabetes mellitus in 2008. She further explained that the diagnosis of hypertension occurred some ten years prior to the Veteran's diagnosis of diabetes, which even in 2008 was premature as the Veteran only met the criteria for impaired fasting glucose not diabetes at that time. Nonetheless, the examiner pointed to the fact that a diagnosis of hypertension preceded any diagnosis of diabetes. The examiner also highlighted the fact that the Veteran's blood pressure remained stable of the past 12 years without any change in readings after the Veteran was diagnosed with diabetes. The Board finds this opinion highly probative as to the issue of secondary service connection as the examiner stated a clear opinion and supported that opinion with a cogent, thorough rationale. See Nieves-Rodriguez, 22 Vet. App. 295; Stefl, 21 Vet.App. at 124.

To the extent that the Veteran himself asserts that hypertension is somehow related to his period of active service, to include on a secondary basis, the Board finds that such a complex medical question is beyond the ken of a layperson. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Likewise, while post-service treatment records note treatment for hypertension, no medical professional has opined that hypertension is somehow related to the Veteran's service. As such, there is no competent evidence counter to the probative June 2014 VA examiner's opinion, which is against a finding that hypertension is related to service.

The Board acknowledges the Veteran's April 2014 statement that Dr. Symonds and a January 2011 VA examiner have each told the Veteran that his hypertension was due to his service-connected diabetes. See April 2014 Statement of Veteran. The Board initially notes that the January 2011 VA examiner did not note on his examination report that hypertension was related to diabetes and there is no treatment note of record relating hypertension to diabetes. Nonetheless, the Veteran is competent to report what various providers have told him. The Board observes, however, that a layperson's account of a physician's medical opinion ". . . is simply too attenuated and inherently unreliable to constitute [competent] 'medical' evidence." Robinette v. Brown, 8 Vet. App. 69, 77 (1995). Further, those bare opinions, provided secondhand by the Veteran, are of extremely limited probative value as there are no accompanying rationales explaining why the physicians believe that hypertension is related to diabetes. See Nieves-Rodriguez, 22 Vet. App. 295 (noting that the probative value of a medical opinion comes from when it is the factually accurate, fully articulated, and sound reasoning for the conclusion).

Thus, the probative evidence is against a finding that service connection is warranted on a secondary basis. On one hand is the highly probative opinion of the June 2014 VA examiner, who concluded that hypertension was not caused or aggravated by diabetes. The June 2014 VA examiner provided a cogent, thorough rationale to support her conclusion. On the other hand are the bare conclusions of two physicians, as reported by the Veteran, which are completely devoid of any supporting rationale. The June 2014 VA examiner's opinion is far more probative than those reported by the Veteran as the June 2014 VA examiner provided a strong supporting rationale in support of her conclusion. As such, the weight of the evidence is against a finding that secondary service connection is warranted.

Thus, as the evidence is against the Veteran's claim, there is no reasonable doubt to be resolved in the Veteran's favor. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

ORDER

Entitlement to service connection for hypertension is denied.


REMAND

Pursuant to the Board's March 2014 remand instructions, the Veteran was afforded a VA examination in June 2014. With regard to whether the Veteran's left kidney disability was related to service, the VA examiner opined in the negative. As rationale, the examiner explained that there was no evidence of any kidney problems in the Veteran's service treatment records (STRs) and while the Veteran was exposed to Agent Orange, renal cancer is not a presumptive disability. This rationale is inadequate. The examiner cannot rely solely on the fact that there is no evidence of a kidney disability in the Veteran's STRs. See Dalton v. Nicholson, 21 Vet. App. 23 (2007). Likewise, while renal cancer is not a presumptive disability under 38 C.F.R. § 3.309(e), that fact alone does not automatically mean that the Veteran's kidney disability is not related to his presumed exposure to herbicides in Vietnam. See Combee, 34 F.2d at 1042.

Once VA has provided a VA examination, it is required to provide an adequate one, regardless of whether it was legally obligated to provide an examination in the first place. Barr v. Nicholson, 21 Vet. App. 303 (2007). Furthermore, a remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. See Stegall, 11 Vet. App. 268. As the June 2014 VA examination report does not contain an appropriate opinion as to whether the Veteran's kidney disabilities are associated with his exposure to herbicides and the opinion as to whether a kidney disability was aggravated by his diabetes is inadequate, clarification must be sought. 

Accordingly, the case is REMANDED for the following action:

1. Return the claims file to the June 2014 VA examiner (or another qualified examiner, if unavailable) for clarification. The claims file, including a copy of this remand, must be provided to the examiner in conjunction with the requested opinion. The examiner should opine as to the following:

Is it at least as likely as not (a 50 percent or greater probability) that any diagnosed kidney disability is related to any incident of the Veteran's military service, to include conceded exposure to herbicide exposure therein? In addressing this question, the examiner is advised that the fact that a given disability is not one for which service connection can be presumptively awarded cannot be used as the sole basis for a negative opinion. 

No additional examination of the Veteran is necessary, unless the examiner determines otherwise.

A comprehensive rationale must be provided for any opinion rendered. If the examiner cannot provide the requested opinion without resorting to speculation, he or she should expressly indicate this and provide a supporting rationale as to why the opinion cannot be made without resorting to speculation.

2. Then readjudicate the claim, and if the benefit sought on appeal remains denied, issue a supplemental statement of the case.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
S. BUSH
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs