PLAGER, Circuit Judge.
The meaning of “a well grounded claim” as that term is used in the law governing veterans benefits is the issue before the court. Burke Hensley appeals from a decision of the United States Court of Ap *1257 peals for Veterans Claims,[1] Hensley v. West, 1998 WL 666701, No. 96-978 (Vet. App. Sept. 22, 1998), which dismissed his case for failure to state a well grounded claim. Because the basis on which the Court of Appeals for Veterans Claims decided the case is not consistent with the statutes and rules governing its authority, we vacate the decision of the Court of Appeals for Veterans Claims and remand for further proceedings consistent with this opinion.
BACKGROUND
Veteran Burke Hensley served as an Army paratrooper during World War II. In January 1944, he was ordered to participate in ten rounds of testing of mustard gas and Lewisite. After the tests, he was hospitalized, then given a disability discharge from the Army. He was diagnosed with service-connected bronchial asthma and severe anxiety and psychoneurosis, and these service-connected awards, are still in effect.
In 1974, Mr. Hensley was also diagnosed with heart disease. In 1992, Mr. Hensley filed a claim with the Department of Veterans Affairs (“DVA”) for a service connection for his heart disease, based on his in-service exposure to mustard gas. As evidence of the nexus between the heart disease and his exposure, he presented a 1986 medical report from Dr. Jeffery A. Rey, indicating that Mr. Hensley’s lung disease could have stressed his heart, but stating that he could not connect them “unequivocally”; a 1986 report from Dr. Ahsan Qazi, indicating that Mr. Hensley’s angina was aggravated by his anxiety neurosis; and a 1987 report from Dr. Timothy Howe, indicating that obstruction of the lungs could have an impact on Mr. Hensley’s heart condition.
In addition, Mr. Hensley submitted a DVA report entitled Veterans at Risk: The Health Effects of Mustard Gas and Lewisite.[2] The report stated, among other things, that a connection between heart disorders and toxic gas exposure could not be ruled out, and suggested that oxygen deprivation as a consequence of exposure-induced lung disorders might result in degeneration of heart muscle and thus eventually lead to abnormal heart action.
None of the medical reports stated that the doctor had directly evaluated Mr. Hensley sufficiently or had sufficient access to his prior records to conclude with certainty that his heart disease was linked to his exposure. However, at a minimum all of the medical reports raised the question whether a complete review of Mr. Hensley’s record, coupled with further examinations, might establish a link between his heart condition and his lung condition or his anxiety neurosis, which were in turn linked to his toxic gas exposure.
Mr. Hensley maintained that his claim was further supported by two DVA regulations. First, 38 C.F.R. § 3.316(a)[3] provides a conclusive presumption that lung disorders are service-connected when the veteran was exposed to mustard gas in service. Second, 38 C.F.R. § 3.310(a) provides that a secondary disability proxi *1258 mately due to or the result of a service-connected disability is deemed to be service-connected. Under these regulations, Mr. Hensley argued, his lung disease is presumptively service-connected (§ 3.316(a)), his heart disease is linked to his lung disease (the medical evidence), and therefore his heart disease is service-connected (§ 3.310(a)).
The DVA Regional Office denied the claim, and Mr. Hensley appealed to the Board of Veterans Appeals (“BVA”). The BVA reviewed the diseases listed in 38 C.F.R. § 3.316(a), designated as presumptively linked to mustard gas exposure, and noted that heart disease was not among them. The BVA concluded that any disease not listed in § 3.316(a) was presumptively not linked to exposure, and therefore held that the claim was not well grounded:
Without commenting on the merits of his claim, the Board emphasizes that service connection for heart disease based upon exposure to mustard gas is not contemplated within the applicable regulation. Further, analysis in this regard, therefore, is not warranted.
In re Hensley, BVA 93-28192, at 5 (1996).
Mr. Hensley appealed the BVA’s decision that his claim’ was not well grounded to the Court of Appeals for Veterans Claims, which sustained the BVA; However, the Court of Appeals for Veterans Claims recognized that the BVA’s application of the regulation was improper. The Court noted that the cited regulation established a presumption that the listed diseases were caused by mustard gas, but it did not foreclose the alternative route of directly demonstrating service connection for other unlisted diseases asserted to be caused by mustard gas. See Hensley, slip op. at 6. The Court of Appeals for Veterans Claims then reviewed “de novo ” whether the claim was well grounded, and found that the claim was not well grounded as a matter of law. See id. at 4-6. The Court of Appeals for Veterans Claims then held that the BVA’s error was therefore not prejudicial to Mr. Hensley. See id. at 6.
The Court of Appeals for Veterans Claims purported to use the test for a well grounded claim endorsed by this court in Epps v. Gober, 126 F.3d 1464 (Fed.Cir.1997). See Hensley, slip op. at 4. Under Epps,
a “well grounded” claim is:
[A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of § 5107(a). For a claim to be well grounded, there must be (1) a medical diagnosis of a current disability; (2) medical, or in certain circumstances, lay evidence of in[-]service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between an in-service [disease or injury] and the current disability. Where the determinative issue involves medical causation, competent medical evidence to the effect that the claim is plausible is required.
Epps [v. Brown], 9 Vet.App. [341,] 343-44 [(1996)] (citations and quotations omitted). We adopt this definition as one that properly expresses the meaning of the statute.
126 F.3d at 1468.
The Court of Appeals for Veterans Claims found that Mr. Hensley had submitted evidence showing (1) heart disease and (2) exposure to mustard gas in service, but he had failed to establish (3) any nexus between them. See Hensley, slip op. at 4. In reaching this conclusion, the Court of Appeals for Veterans Claims addressed Mr. Hensley’s asserted evidence of nexus and rejected it.
Dr. Rey’s and Dr. Qazi’s diagnoses were rejected because, according to the Court of Appeals for Veterans Claims, these doctors wrongfully believed that the mustard gas had caused Mr. Hensley’s lung problems and anxiety neurosis. The Court of *1259 Appeals for Veterans Claims found that these problems predated his exposure to mustard gas. See id. at 5-6. Dr. Howe’s diagnosis was rejected because his evaluation of Mr. Hensley was not complete and he “did not explicitly state that [Mr. Hensley’s] exposure to mustard gas is related to his present heart condition.” Id. at 6. The Veterans at Risk report was dismissed because Mr. Hensley impermissibly “self-diagnosed” his. heart disease; he heeded a medical opinion if he wanted to use the report. See id. at 5. Having rejected all the nexus evidence, the Court of Appeals for Veterans Claims found Mr. Hensley’s claim not well grounded, and therefore dismissed it. See id. at 6.
, Mr. Hensley now appeals the Court of Appeals for Veterans Claims’s dismissal of his claim. Mr. Hensley asserts that Epps was incorrectly decided. He particularly attacks the holding that the DVA’s duty to assist under 38 U.S.C. § 5107(a)[4] does not attach until the veteran establishes a well grounded claim. He asserts that the DVA should have helped him develop his claim, which could have cured many of the defects in his nexus evidence, defects on which the Court of Appeals for Veterans Claims relied in dismissing his claim. Mr. Hensley also asserts that the Court of Appeals for Veterans Claims improperly made de novo findings on facts that were not addressed by the' BVA when it held that his stated medical problems predated his exposure to mustard gas. Finally, Mr. Hensley asserts that even if the standard for a well grounded claim as set forth in Epps is correct, the Court of Appeals for Veterans Claims’s application of the standard to him exceeded the standard applied to other veterans and was thus contrary to law and a denial of due process.
DISCUSSION
I. Standard of Review
This court has jurisdiction to review a challenge to the validity or interpretation of a statute or regulation relied upon by the Court of Appeals for Veterans Claims. See 38 U.S.C. § 7292. In so doing, we review independently and without deference the Court of Appeals for Veterans Claims’s interpretations of statutory . revisions and regulations. See 38 U.S.C. § 7292(a), (c). This court has the responsibility to decide all relevant questions of law. See 38 U.S.C. § 7292(d).
II. The Well Grounded Claim
The issues in this case center on the statutory provision regarding what is known as a “well grounded claim.” Indeed, that provision has been the focus of a significant number of cases recently before this court. We therefore will address the issues fully, in the hope of reducing the uncertainty in this area of veterans law.
A. The Veterans Claim Process
At oral argument, the parties exhibited a certain amount of confusion over the veterans claim process, and particularly the burdens and presumptions that apply at the various stages. We therefore take this opportunity to clarify these matters. This discussion will also provide context for further development of the issues surrounding the well grounded claim requirement.
The claim process begins when a veteran submits a request for benefits to a DVA Regional Office (“RO”). The DVA has created a special form for this process, which covers the basic information required. See 38 U.S.C. § 5102; 38 C.F.R. § 3.150. The statutes then place upon the veteran the burden before the RO of establishing that the claim is well grounded: “[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a *1260 fair and impartial individual that the claim is well grounded.” 38 U.S.C. § 5107(a). If the RO requires further information or makes a preliminary determination that the claim is not well grounded because the application for benefits is incomplete, it has a duty to inform the veteran of what information is needed, and what evidence is required to complete the claim application. See 38 U.S.C. § 5103.
If the RO determines that the claim is well grounded, the statutes then place upon the DVA the duty to assist the veteran in developing the facts in support of the claim: “The Secretary shall assist such a claimant in developing the facts pertinent to the claim.” 38 U.S.C. § 5107(a). This is known generically as “the duty to assist.” (The requirement that the claim be well grounded before the duty to assist arises was established by this court in Epps, 126 F.3d at 1469, holding that the phrase “such a claimant” in § 5107(a) refers to a person who establishes that the claim is well grounded.) After full development, the RO makes a determination on the merits as to whether the claim should be granted or denied. See 38 U.S.C. § 5107(b). In making this determination, the RO is required to resolve issues of doubt in favor of the veteran. See id.
As noted, this court held in Epps that the duty to assist does not attach until the claim is considered to be well grounded. See 126 F.3d at 1469. Thus, if the veteran has not presented a well grounded claim, the DVA has no statutory duty to assist the veteran in developing the claim (except for the duty under § 5103 to explain to the veteran what information is needed to make the claim complete).
If the RO determines that the claim is not well grounded and thus denies benefits as well as further assistance, or if the RO considers and denies the claim on the merits, the veteran may appeal the RO decision to the BVA. See 38 U.S.C. § 7104(a) (1994 & Supp. III 1997). If the BVA determines that the RO was correct that the claim is not well grounded and thus is denied on its face, or determines that the claim though considered by the RO to be well grounded was properly denied on the merits, the veteran may appeal the BVA’s decision to the Court of Appeals for Veterans Claims. See 38 U.S.C. § 7252(a). Finally, if the Court of Appeals for Veterans Claims affirms the denial determination of the BVA, the veteran may appeal any issues of statutory or regulatory interpretation decided by that court to this court. See 38 U.S.C. § 7292(a).
The statutory structure leaves no doubt that a claim that does not meet the threshold requirement of well-groundedness is a claim without any potential merit, and thus fails on its face; denial follows in due course. On the other hand, when the veteran presents a well grounded claim to the RO, that triggers under the statute the DVA’s duty to assist the veteran in perfecting the claim, and readies the claim for consideration on the merits by the RO, and, if appealed, by the BVA and ultimately the Court of Appeals for Veterans Claims. The well grounded claim requirement, then, serves a “gatekeeping” function in the claims process. By weeding out claims that are so lacking in merit that benefits cannot possibly be awarded, regardless of what assistance the DVA may be able to provide, the well grounded claim requirement helps prevent the waste of valuable DVA resources. In this way, it is analogous to Federal Rule of Civil Procedure 12(b)(6), which serves a similar function in civil litigation. See Robinette v. Brown, 8 Vet.App. 69, 75 (1995) (making this analogy); King v. Brown, 5 Vet.App. 19, 21 (1993) (same).
B. The Standard for a Well Grounded Claim
Mr. Hensley devotes much of his brief to urging us to overturn this court’s Epps decision with respect to both the standard for a well grounded claim, see 126 F.3d at 1468 (quoted supra), and the requirement that a claim be well 'grounded *1261 before the duty to assist attaches, see id. at 1469.[5] However, as Mr. Hensley is fully aware, this panel lacks the authority to overturn a prior decision of another panel. See South Corp. v. United States, 690 F.2d 1368 (Fed.Cir.1982). Any reversal of Epps by this court will have to be done by the court en banc. Mr. Hensley’s appeal does, however, require us to address the standard applied by the Court of Appeals for Veterans Claims in determining whether the requirement of a well grounded claim was met in his case.
As discussed above, the function of the requirement that a claimant establish that a claim is well grounded is, with regard to claims that are potentially meritorious, to trigger the DVA’s duty to assist, and, conversely, to avoid triggering the duty to assist for claims that are totally lacking in merit. This function dictates that the threshold for the standard, the claimant’s burden of persuasion, be low, as a high threshold risks the elimination of potentially meritorious claims, which would undermine the entire veteran-friendly nature of the veterans claim system.
The Court of Appeals for Veterans Claims recognized early on that the burden of persuasion for establishing a well grounded claim was unique, and uniquely low. One of the earliest pronouncements of the standard is-found in Murphy v. Derwinski, 1 Vet.App. 78, 81 (1990):
A well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a)].
This court subsequently cited the Murphy standard with approval (although it did not formally adopt it) in Woodson v. Brown, 87 F.3d 1304, 1305 (1996). See also Hayre v. West, 188 F.3d 1327, 1333-34 (Fed.Cir.1999) (citing the Murphy definition).
The Murphy standard established the threshold against which the evidence of a well grounded claim would be measured. The specific evidentiary elements that had to be included in the claim were set forth in Caluza v. Brown, 7 Vet.App. 498 (1995). In that case the Court of Appeals for Veterans Claims described three specific elements that had to be shown and the type of evidence required to establish these elements:
[I]n order for a claim to be well grounded, there must be competent evidence of current disability (a medical diagnosis); of incurrence or aggravation of a disease or injury in service (lay or medical evidence); and of a nexus between the in-service injury or disease and the current disability (medical evidence).
Id. at 506 (citations omitted).
Caluza did not change the standard for assessing these elements, quoting Murphy on this point. See id. at 504. Similarly, in Robinette (decided after Caluza), the Court of Appeals for Veterans Claims stated
to be well grounded a claim need not be supported by evidence sufficient for the claim to be granted. ' Rather, the law establishes only a preliminary threshold of plausibility with enough of an eviden-tiary basis to show that the claim is capable of substantiation (if it is not meritorious when initially presented).
8 Vet.App. at 76. The Court of Appeals for Veterans Claims went on to state “[t]he threshold of plausibility to make a claim well grounded ‘is rather low.’ ” Id. (quoting White v. Derwinski, 1 Vet.App. 519, 521 (1991)).
When the decision of the Court of Appeals for Veterans Claims in Epps was reviewed by this court, we approved both the three element evidentiary test of Calu-za and the threshold standard of Murphy, as explicated by the Court of Appeals for *1262 Veterans Claims. Thus, the standard of proof affirmed in Epps emphasizes that a well grounded claim need only be “plausible” or “capable of substantiation,” and that “[s]uch a claim need not be conclusive but only possible.” 126 F.3d at 1468.
The DVA also has recognized that the evidentiary threshold for a well grounded claim (and hence the standard for triggering its duty to assist) is low. Its current regulations indicate an intent to assist veterans in developing then* claims as much as possible before deciding whether the claims are well grounded, and the DVA has frequently provided at least some assistance to claimants whose claims had not yet been deemed well grounded. See 38 C.F.R. §§ 3.103(a), 3.159; see also VA Adjudication Manual M21-1, pt. III, ch. 2, para. 1.03.a (Feb. 23,1996) (“Before a decision is made about a claim being well grounded, it will be fully developed.”). This approach accords the well grounded claim requirement its proper place, and puts the emphasis where it logically belongs in the vast majority of cases, on the merits of the claim.[6]
When we look across the canvas of rules and precedent on this point, and discount those few cases that seem not to fit the pattern, we have no difficulty concluding that the threshold established for assessing whether a claim is well grounded has long been understood to be uniquely low, and this court’s opinion in Epps did not change that. The proposed regulations preserve this low threshold.
Such a low evidentiary threshold is particularly appropriate in the veterans context because in the early stages of the application process, the veteran is almost always unassisted by legal counsel. See 38 U.S.C. § 5904(c)(1) (attorneys and agents prevented from charging for services rendered prior to date of final decision from BVA). Since significant if not essential evidence regarding the merits of a claim often resides in the DVA’s files, it would be fundamentally unfair to erect a steep evidentiary hurdle in front of an unassisted veteran before allowing the veteran to receive assistance from the DVA. The low threshold is also appropriate in light of the uniquely pro-claimant nature of the veterans compensation system. See Hodge v. West, 155 F.3d 1356, 1362-64 (Fed.Cir.1998) (recognizing that the veterans benefit system is “uniquely pro-claimant”); Hayre, 188 F.3d at 1333-34 (pointing out Congress’s recognition of “the strongly and uniquely pro-claimant system of awarding benefits to veterans”).
In assessing whether the veteran has met the requisite threshold, the statutes, rules, and cases make clear that the DVA must construe all facts, make all inferences, and apply all presumptions in favor of the veteran. Thus,
the evidence submitted in support of a claim “must ... be accepted as true for the purpose of determining whether the claim is well grounded ... [except] when the evidentiary assertion [other than in a government record] is inherently incredible or when the fact asserted is beyond the competence of the person making the assertion.”
Robinette, 8 Vet.App. at 75-76 (quoting King, 5 Vet.App. at 21).
C. Review of the Well Grounded Claim Decision
As we have explained, if the- RO finds the claim not well grounded, and thus denies assistance to the veteran in perfecting the claim (the consequence of which is that the claim fails entirely), the veteran may appeal that decision to the BVA. See 38 U.S.C. § 7104(a). If the BVA affirms the RO’s decision that the claim is not well *1263 grounded, and therefore the DVA has no duty to assist even under the low threshold we have described, the veteran may appeal this decision to the Court of Appeals for Veterans Claims. See 38 U.S.C. § 7252(a).
The Court of Appeals for Veterans Claims correctly treats the conclusion of whether a claim is well grounded as a question of law, see King, 5 Vet.App. at 21, and therefore reviews the ultimate conclusion without deference to the BVA. However, this standard of review is not as broad as the Court of Appeals for Veterans Claims views it; both statute and judicial doctrine constrain the appellate review process.
The Court of Appeals for Veterans Claims has stated that BVA decisions regarding whether a claim is well grounded are subject to de novo review. See, e.g., Grivois v. Brown, 6 Vet.App. 136, 139 (1994) (citing King, 5 Vet.App. at 21). The phrase “de novo review,” although occasionally used by both this court and the Court of Appeals for Veterans Claims, may in certain contexts be misunderstood. Appellate courts can “review” only that which has happened in the past, while the term “de novo” may be understood to mean anew, without reference to what has gone before. To the extent that “de novo” connotes judicial review anew and without reference to what has gone before, the term fails to accurately describe the appellate process, and particularly is this so when it is applied to review of issues upon which any measure of deference is accorded to the decision under review.
In the instance of well-groundedness, the ultimate conclusion is a question of law, but that conclusion rests on factual matters the determination of which by the agency fact-finders is entitled on review to substantial deference. See, e.g., 38 U.S.C. § 7261(a). Thus it is incorrect to describe appellate review of well-groundedness as “de novo.” As we shall see, the imprecise use of the de novo terminology in veterans cases may have contributed to the Court of Appeals for Veterans Claims’s confusion over the scope of its review of the BVA.
As noted, while the ultimate conclusion of well-groundedness is one of law, this conclusion is heavily based on factual determinations. On factual matters, the findings of the BVA may be overturned by the Court of Appeals for Veterans Claims only if they are clearly erroneous. See 38 U.S.C. § 7261(a)(4) (“In any action brought under this chapter, the Court of Appeals for Veterans Claims, to the extent necessary to its decision and when presented, shall ... in the case of a finding of material fact made in reaching a decision in a case before the Department with respect to benefits under laws administered by the Secretary, hold unlawful and set aside such finding if the finding is clearly erroneous.”). Furthermore, “in no event shall findings of fact made by the Secretary or Board of Veterans Appeals be subject to trial de novó by the Court [of Appeals for Veterans Claims].” 38 U.S.C. § 7261(c).
The statutory provisions are consistent with the general rule that appellate tribunals are not appropriate fora for initial fact finding. Thus, the Supreme Court has held that when a court of appeals reviews a district court decision,-it may remand if it believes the district court failed to make findings of fact essential to the decision; it may set aside findings of fact it determines to be clearly erroneous; or it may reverse incorrect judgments of law based on proper factual findings; “[b]ut it should not simply [make] factual findings on its own.” Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986); see also First Interstate Bank v. United States 61 F.3d 876, 882 (Fed.Cir.1995) (following Icicle Seafoods). The Court of Appeals for Veterans Claims has previously recognized this restriction on its scope of review: “Because we are a Court of review, it is not appropriate for us to make a de novo finding, based on the evidence, of [a factual matter].” Webster v. Derwinski, 1 Vet.App. 155, 159 (1991); *1264 see also Murillo v. Brown, 8 Vet.App. 278, 280 (1995) (“For the Court to base its review on documents not included in the Board’s calculus at the time it rendered its decision would render the Court a fact finder de novo, exceeding its authority under the statutory scheme which establishes the Court as an appellate body. See 38 U.S.C. § 7261(c).”).[7]
In the case before us, the BVA found Mr. Hensley’s claim not to be well grounded because heart disease was not listed in 38 C.F.R. § 3.316(a) as among the diseases presumptively linked to exposure to mustard gas or Lewisite. From this the BVA concluded that heart disease could not be linked to exposure to the gas. See Hensley, slip op. at 6. As a consequence of this determination, the BVA did not consider the surrounding facts or the merits of the case that they might support. We previously noted that the Court of Appeals for Veterans Claims correctly recognized that this determination was erroneous. The provision in § 3.316(a) that creates a presumption in favor of the veteran for certain conditions does not preclude establishing causation for other conditions under normal DVA rules and procedures. See Hensley, slip op. at 6.
Recognizing this error on the part of the BVA, the proper course for the Court of Appeals for Veterans Claims would have been to remand the case to the BVA for further development and application of the correct law. Since the ground given by the BVA for its decision led it to an erroneous conclusion and consequently to an insufficient factual development of the record, its decision could not be affirmed.
Instead, the Court of Appeals for Veterans Claims took it upon itself to review “de novo ” the BVA’s determination of well-groundedness. See id. It began by dissecting the factual record in minute detail. The Court of Appeals for Veterans Claims determined that Mr. Hensley’s lung condition predated his exposure to mustard gas, see id. at 5; upon what evidence this conclusion is based is not clear from the record before us. Even assuming that the factual record were incontrovertible on this point, and that it were within the purview of an appellate court to make such a finding, neither of which is the case, the conclusion the court reached still required that the court first determine that the supposed preexisting condition was not aggravated by the in-service exposure to mustard gas.
The Court of Appeals for Veterans Claims also applied an incorrect standard to its analysis of whether Mr. Hensley presented a well grounded claim. As explained above, the proper standard is that the claim must be “plausible,” “possible,” or “capable of substantiation.” However, in discussing the Veterans at Risk report, the Court of Appeals for Veterans Claims said that the report did not establish a “conclusive connection” or “a concrete causal connection.” Hensley, slip op. at 5. Similarly, the Court of Appeals for Veterans Claims criticized Dr. Howe’s report because it did not “explicitly state that [Mr. Hensley’s] exposure to mustard gas is related to his present condition.” Id. at 6. These statements indicate that the Court of Appeals for Veterans Claims erroneously applied a standard considerably more stringent than the correct “plausible,” “possible,” or “capable of substantiation” standard.
Finally, we note one further legal error by the Court of Appeals for Veterans Claims, regarding the use of treatise evidence. The Court of Appeals for Veterans Claims was of the view that in submitting the Veterans at Risk report, Mr. Hensley was “attempting to self-diagnose his heart disease,” which it deemed impermissible. Hensley, slip op. at 5. However, this conclusion does not reflect what Mr. Hensley *1265 actually did. Mr. Hensley already had a diagnosis of heart disease from several doctors. He used the report not to establish the first element of the well grounded complaint, the diagnosis of a current disorder, but rather to support the third element, the nexus between his service and his current disease. A veteran with a competent medical diagnosis of a current disorder may invoke an accepted medical treatise in order to establish the required nexus; in an appropriate case it should not be necessary to obtain the services of medical personnel to show how the treatise applies to his case.[8] See also Wallin v. West, 11 Vet.App. 509, 514 (1998) (holding that medical treatises can serve as the requisite evidence of nexus). Thus, on remand, the Veterans at Risk report should be evaluated to see if it supports a nexus between Mr. Hensley’s exposure to mustard gas and his heart disease, sufficient to meet the low threshold of the well grounded claim requirement.
Because the Court of Appeals for Veterans Claims’s decision applies an incorrect standard of proof to the evidence presented and is based on de novo fact finding by the Court of Appeals for Veterans Claims, it must be vacated and the case remanded. On remand, the Court of Appeals for Veterans Claims is instructed to remand the case to the BVA it can reevaluate whether Mr. Hens)., nas stated a well grounded claim, "polling the correct law and the correct Standard, as set forth in this opinion.[9]
CONCLUSION
The decision of the Court of Appeals for Veterans Claims is

VACATED and REMANDED with instructions.

. On March 1, 1999 the name of the United States Court of Veterans Appeals was changed to the United States Court of Appeals for Veterans Claims, pursuant to the enactment of the Veterans Programs Enhancement Act of 1998, Pub.L. No. 105-368, § 511, 122 Slat. 3315, 3341. We refer throughout this opinion to the court by its new name, although at the time of the proceedings and decisions here reviewed it was not so named.

. In 1993, after the poison gas tests became public knowledge, the DVA commissioned a report on the tests’ long-term effects. The resulting report was entitled Veterans at Risk: The Health Effects of Mustard Gas and Lewis-ite. The report found that chronic respiratory diseases and psychological disorders like those suffered by Mr. Hensley were causally related to exposure to these agents. Veterans at Risk also addressed the connection between exposure and heart disease, but found that the data did not prove or disprove a causal connection.

.All citations to C.F.R. are to the 1999 edition.

. All citations to U.S.C. are to the 1994 edition, unless otherwise noted. In addition, 38 U.S.C. §§ 5904, 7252, 7261, and 7292 were amended in 1998 as part of the renaming of the Court of Appeals for Veterans Claims (see footnote 1, supra).

. Mr. Hensley is not alone in this position. This court has been asked to address Epps in a number of recent appeals.

. In response to the Epps opinions and Morton v. West, 12 Vet.App. 477 (1999), the DVA has proposed new regulations that adopt the three-element test for a well grounded claim, now found in Epps, and the rule of no assistance until the claim is well-grounded, found in Epps and Morton. See 64 Fed.Reg. 67528 (1999) (proposing to amend 38 C.F.R. §§ 3.103(a) and 3.159).

. See also Fleshman v. West, 138 F.3d 1429 (Fed.Cir.1998), discussing the relevance of the Chenery doctrine to veterans cases.

. Because it is not implicated in the present case, we express no views as to the Court of Appeals for Veterans Claims’s ruling that a veteran such as Mr. Hensley may not combine his testimony regarding his symptoms with a medical treatise to diagnose his own disease. See Hensley, slip op. at 5.

. So that there be no misunderstanding, we offer no opinion on whether Mr. Hensley has a well grounded claim, or, assuming he is found to have a well grounded claim, whether ultimately he is entitled on the merits to a benefits decision in his favor.